## Commonwealth v. Cox

*E. Leroy Keen*, assistant district attorney, and *Thomas D. Caldwell*, for Commonwealth.

*Scott S. Leiby*, for defendant.

WICKERSHAM, J., December 5, 1932.—The defendant was indicted for fraudulent conversion in violation of the Act of May 18, 1917, P. L. 241, section 1 of which provides as follows:

"That any person having received or having possession, in any capacity or by any means or manner whatever, of any money or property of any kind whatsoever, of or belonging to any other person . . . , or which any other person, . . . is entitled to receive and have, who fraudulently withholds, converts, or applies the same, or any part thereof, or the proceeds or any part of the proceeds, derived from the sale or other disposition thereof, to and for his own use and benefit, or to and for the use and benefit of any other person, shall be guilty of a misdemeanor . . ."

The trial resulted in a verdict of guilty, whereupon the motion for a new trial followed. Only a general exception was filed to the charge of the court.

The facts established by the evidence and which the jury believed are substantially as follows: Edward S. Cox was seriously injured in an automobile

accident on January 30, 1932. He was taken to the Polyclinic Hospital and remained there until February 6th, on which date he was taken to his home, and Dr. Kerper, the prosecutor, was called in to render medical service. He treated Cox continuously from February 6th to March 28th, part of the time at Cox's home and later at the doctor's office. On March 26th an insurance adjuster arrived at terms of settlement with Mr. Cox. Dr. Kerper testified that, previous to the date of settlement, "Mr. Cox and I had absolutely decided—counted it out in my office on the basis of $200. . . . We had agreed to that." Dr. Kerper was not present when the settlement was made. Mr. Cox, on the witness stand, in his direct testimony, denied that he had agreed to pay Dr. Kerper $200. He admitted that he received the entire amount of the settlement, which was $575.

The settlement involved a number of items claimed by Cox. There was the doctor bill of Dr. Kerper for $200; the loss of earnings of Mr. Cox, amounting to $200; the bill of Dr. Douglass, $25; a hospital bill of $45; broken glasses, $17.20; a suit of clothes soiled and a coat torn, purchased at a cost of $45; and an overcoat soiled and torn, purchased at a cost of $45; upon which last two items $45 was allowed. The defendant admitted that he knew Dr. Kerper "was going to put $200 in". Cox testified his understanding was that the adjuster should allow him $200 for medical services generally and not only for Dr. Kerper.

After the settlement was made between the adjuster and Mr. Cox a draft was prepared in which Cox and Dr. Kerper were made the payees. Mrs. Cox took the draft to Dr. Kerper's office, where and when she wrote her individual check to the doctor for $200 and Dr. Kerper endorsed the draft. On the same night she wrote the following letter to the Commonwealth Trust Company, upon which company her check was drawn:

"Commonwealth Trust Company,
      "Harrisburg, Pa.
   "Gentlemen: Please have payment stopped on my check for $200 given to Dr. E. P. Kerper on this date. Will pay cash."

It appears that this letter was dated March 28th, although the witness testified it should have been dated March 29th. Mrs. Cox testified that on the night of the 29th she went to Dr. Kerper's office "to settle that thing"; however, nothing came of it. The defendant admitted that he received the entire $575 settlement and that the $200 which should have been paid to Dr. Kerper was not paid at the time of the trial.

We think the jury was justified in finding that the conduct of Mrs. Cox, as above stated, was in corroboration of the testimony of Dr. Kerper and in ratification of the agreement that $200 of the adjustment of Cox's compensation belonged to Dr. Kerper.

There was some controversy, it seems, about the amount of Dr. Kerper's bill, and an effort was made by counsel for the defendant to offer evidence that his services were not worth $200. In view of the fact that the insurance adjuster had placed that amount in the adjustment for Dr. Kerper and that the draft was drawn in favor of Dr. Kerper and the defendant, we were of opinion that the amount which the doctor was to receive had been adjusted between him and Cox and that we could not determine in a prosecution in the quarter sessions what amount the doctor should have received. That was not the issue we were trying. We were of opinion that matter had been adjusted. In other words, all the damage claimed by Cox amounted to much less than $575; in fact it amounted only to $342; then Dr. Kerper's bill was added, which made the amount $542, which was not satisfactory to Cox, who then claimed $575 as the total bill, and upon that basis the claim was adjusted.

Cox claimed that the $200 was added to his claim for damages for the payment of medical services generally. We submitted that question to the jury when we instructed them as follows, after referring to the several items going to make up the settlement of $575:

". . . You will have the draft with you and you will observe it was drawn in the name of Edward S. Cox and Dr. E. P. Kerper. Why was that done? Probably the only explanation you can arrive at is it was done because of that settlement made in Dr. Kerper's office, where Dr. Kerper's name was written into the bill of settlement for $200, and therefore it would seem to us—but we will leave that to you—that the settlement was reflected in this draft and you are to determine whether $200 of that $575 was not the property of Dr. Kerper, because Cox was not paying him, the insurance company was paying him, and they were satisfied to pay Dr. Kerper $200 for the treatment of this defendant.

"Was the defendant, Cox, entitled to any of that $200? How could he be? That we leave to you. If you find that he was not entitled to that $200 and that it belonged to Dr. Kerper, then, if he kept it, diverted it to his own use and did not give it to Dr. Kerper, then he would be guilty under this act of assembly."

This charge was more favorable to the defendant than he deserved, as the act provides not only that the defendant was in possession "of any money or property of any kind whatsoever, of or belonging to any other person" but "which any other person . . . is entitled to receive and have". Even if it be conceded that the $200 did not absolutely belong to Dr. Kerper, it clearly appears from the evidence, and the jury has so found, that he was entitled to receive it. So, we repeat, this part of our charge was more favorable to the defendant than he deserved.

And again we charged the jury as follows:

". . . Was this after all Dr. Kerper's money that was in that order? After weighing all of the evidence what happened? Did the insurance company put that amount in and put Dr. Kerper's name to it? If he was entitled to receive that money and they never gave it to him, they got the draft cashed, and kept the money themselves, if you find that to be a fact from all the evidence, then you say defendant is guilty and it would be your duty to find him guilty. If, on the other hand, you reach the conclusion that Dr. Kerper was not entitled to this money which the insurance company put in the bill for him, if that is the conclusion you reach, then your verdict must be for the defendant."

We also submitted to the jury the contention of Mrs. Cox with regard to the letter she wrote after having obtained Dr. Kerper's endorsement on the draft for settlement, as follows:

"Then you have here a letter from the Merchant's Grocery Company, that is, on their stationery, in which she says: 'Please have payment stopped on my check for $200 given to Dr. E. P. Kerper on this date. Will pay in cash.' What does that mean? Mrs. Cox wanted to say that she did not intend to give him the $200, but that she would give him what they thought they owed him. Is that a reasonable construction to put in that letter? That we leave to you. How much was Dr. Kerper entitled to get out of this order of $575? Was he to get what the defendant in this case wanted to pay him or was he to get the $200 that the insurance company in their order and in that itemized statement read to you, said that he should receive?"

We cannot conceive how we could have stated the matter to the jury in plainer English. It is quite true that the insurance adjuster testified that Dr. Kerper had no interest in the $200 allotted to him in the settlement and draft drawn in pursuance thereof. If that be true then why was Dr. Kerper's name added to the draft? That the witness did not attempt to explain, except to say that it

was the custom to write the doctor's name into the draft; but if that were true why was not the name of Dr. Douglass, who had a bill of $25 going to make up the settlement, also written into the draft? The testimony of this witness was utterly inconsistent with the practice he adopted. Also we may inquire why the name of the Polyclinic Hospital, which had a bill of $45, was not included in the draft. Evidently the jury did not believe this testimony.

As we have before stated, only a general exception was taken to the charge. We find nothing fundamentally wrong with it and therefore the fifth reason for a new trial, which alleges that we erred in our charge to the jury, cannot be sustained.

We cannot sustain the first reason for a new trial which alleges we erred in refusing to direct a verdict of not guilty at the close of the plaintiff's case. It then appeared that a settlement was made of the damage claimed by Mr. Cox; that Dr. Kerper's name was entered with that of Cox on the draft for the payment of the settlement; that the defendant collected the entire amount and did not turn over to Dr. Kerper the part of the settlement which belonged to him under the agreement or which the insurance company, the drawer of the check, intended he should receive. With these facts upon the record, we felt it incumbent upon the defendant to explain why he did not turn over the $200 to Dr. Kerper. To have directed the jury to find a verdict of not guilty under the evidence would, we think, have been an injustice to the Commonwealth. This reason cannot be sustained.

Nor can we sustain the second reason, which alleges that the verdict of the jury was against the weight of the evidence. The weight of the evidence is not always with the party having the largest number of witnesses but depends upon the inherent probability of the truthfulness of the testimony given. As we have pointed out in a former part of this opinion, the testimony of Cox, the defendant, was evasive and not very clear and, after all, consisted of a general denial that he owed Dr. Kerper $200, or that he ever agreed to pay him that much. His wife's testimony, referring to giving Dr. Kerper her check for $200 by which she obtained his endorsement to the draft heretofore referred to, does not place her testimony or the defendant's case in a very favorable light. We think the conclusion reached by the jury indicated that the defendant was perfectly willing to have his settlement enhanced in the amount of $200 by having Dr. Kerper's claim for that amount added to the settlement and, having obtained the draft and Dr. Kerper's endorsement thereon and after stopping Mrs. Cox's check in payment of Dr. Kerper's claim, their retention of the $200 which Dr. Kerper was to receive was not honest and was in violation of the Act of 1917 to which we have referred.

We think the cases referred to by counsel for the defendant do not apply to the instant case. In Com. v. Hillpot, 84 Pa. Superior Ct. 454, it was held that "where the evidence on the part of the Commonwealth fails to prove that the prosecutor ever acquired title to the machine, which was sold by the defendant", conviction should be reversed. In Com. v. Bixler, 79 Pa. Superior Ct. 295, it was held that one who borrows money cannot be convicted of fraudulent conversion of the funds loaned to him even though he may have had no intention of paying the loan. Certainly that is sound, but how does this ruling apply to the instant case? In Com. v. Heil, 8 D. & C. 797, it was held that a conviction under an indictment charging the fraudulent conversion of money alleged to be the property of A will be set aside and a new trial granted, where the evidence fails to show that title to the money was ever in A. Again we ask how does this apply to the instant case where the draft for Dr. Kerper's $200 was drawn payable to Dr. Kerper and the defendant, Cox, and which, under the evidence, Dr. Kerper

16

was to receive although he may not have been entitled to that amount for his services.

We are satisfied with the verdict of the jury and the reasons for a new trial are therefore overruled; and the district attorney may call the defendant for sentence.                    From Homer L. Kreider, Harrisburg, Pa.