## Forrest *versus* Nelson Bro's. & Co.

1. Whenever it appears from the contract between parties that the owner of personal property has transferred the possession thereof to another, reserving to himself the naked title, solely for the purpose of securing to himself the payment of the price agreed between them, the contract is necessarily a conditional sale and not a bailment; and while good between the parties, is worthless as to creditors and bona fide purchasers from the transferee without notice.  If the contract is in writing its construction is for the court.

2. An agreement between A., the owner of certain looms, and B., recited that A. "has agreed to sell" eighteen looms to B.  "for the price or sum of $2,100, to be paid in four equal instalments of $525, with interest."  The agreement then provided for the immediate delivery of the looms to B.  "for use by him in his said business," and that upon payment of each instalment a bill of sale for a certain number of them should be executed; and further that the looms should remain the property of A. until paid for.  B. covenanted to insure them in A.'s name, and not to remove them from his (B.'s) premises without A.'s consent. Upon B.'s failure to keep any covenant A. had the right to re-take possession of the looms then unpaid for.  Under this contract B. held and operated the looms until they were levied on by the sheriff under an execution against him.  A. then claimed property in them and on a feigned issue under the Sheriff's Interpleader Act, the court charged the jury that under the contract there was a conditional sale—not a bailment—of the looms to B., which rendered them subject to the claims of his creditors, and that the verdict must be for the defendants.

   *Held,* That there was no error.  The case turned on the construction of the agreement, which was properly for the court; and the terms thereof, together with the delivery of possession under it, constituted a conditional sale of the looms to B., which was void as to his creditors.

3. At the trial A. offered to prove by the subscribing witness that the words "with interest," after the provision for the payment of instalments, were inserted as an agreement to pay rent.

   *Held,* That this offer was properly rejected.

January 13th, 1885.   Before MERCUR, C. J., PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.   GORDON, J., absent.

ERROR to Court of Common Pleas No. 2, of *Philadelphia County:*  Of January Term, 1884, No. 425.

This was, in the court below, a feigned issue under the Sheriff's Interpleader Act, in which John Forrest was plaintiff, and Thomas S. Nelson et al., trading as Nelson Bro's. & Co., were

defendants to determine the ownership of certain looms, levied on by the sheriff, as the property of Chas. Andrews, under an execution issued on a judgment confessed by him to Nelson Bro's & Co., and also claimed by Forrest as his property.

On the trial, before FELL, J., the following facts appeared: In January, 1880, Forrest was the admitted owner of the looms. Andrews desired to buy them, but being insolvent Forrest refused to sell him on credit, and the following agreement was therefore entered into between Forrest of the first part and Andrews of the second part, dated January 27th, 1880:

" Memorandum of agreement made. . . . . . *Witnesseth:* That the party of the first part in consideration of the covenants and agreements of the party of the second part hereinafter contained has agreed to sell unto him eighteen weaving looms, viz.: . . . . . For the price or sum of $2,100, to be paid in four equal instalments, or payments, of five hundred and

with interest

twenty-five dollars each ($525), the first to be made on the
                                ^
thirtieth (30th) day of April, 1880; the second on the 31st day of July, 1880; the third on the 27th day of October, 1880; and the fourth and last on the 27th day of January, 1881. And in the meantime to deliver the said looms into the possession of the said party of the second part for use by him in his said business, but to be and remain the property of the party of the first part until paid for as aforesaid. And the said party of the first part further agrees that upon the payment of each of said instalments as aforesaid, he will thereupon execute and deliver to the said party of the second part a bill of sale for so many of said looms as shall equal in value the amount thereof, and upon the payment of the last instalment, will execute and deliver to the party of the second part a bill of sale for the whole number of said machines; the previously executed bills of sale for the said quarterly payments to be then surrendered and delivered up to the said party of the first part. But it is distinctly understood and agreed by and between the said parties of the first and second part hereto, that neither this contract and agreement, nor the delivery of the said looms thereunder, into the possession of the party of the second part for use by him as aforesaid, shall in any way or manner vest any title or ownership thereto in him either legal or equitable, but the said looms, and every of them shall be and remain the property of the party of the first part, until paid for by the prompt payment of the quarterly instalments as aforesaid.

" *And the said party of the second part,* in consideration of the premises, covenants and agrees to and with the party of the first part as follows, to wit:

" *First.*—That he will upon the delivery of the said looms

[Forrest *v.* Nelson.]

to him cause the same to be insured in the name of the party of the first part. . . . . .

"*Second.*—That he will not remove the said looms from the Fairmount Spinning Mills, Callowhill street, west of Twenty-fifth street, in the City of Philadelphia, without the written consent of the party of the first part.

"*Third.*—That he will punctually pay the said quarterly instalments of five hundred and twenty-five dollars ($525) each, as they severally become due, and on default being made by him therein, that he will thereupon immediately return and deliver up to the party of the first part all of said looms then remaining unpaid for. Or in the event of his failure to do so . . . . . it shall be lawful for the said party of the first part . . . . . to enter upon any premises where the looms may be situated and take possession of all thereof then remaining unpaid for . . . . . and thereupon this contract and all the rights of said party of the second part thereunder shall absolutely cease . . . . ."

Andrews kept possession of the looms under this contract until October 27th, 1881, when they were levied on by the sheriff under an execution issued on a judgment confessed by Andrews to Nelson Bro's. & Co. Part of the looms had been paid for in full and bills of sale given for them in accordance with the contract. The others were delivered by the sheriff to Forrest upon his claim of property and his filing the proper interpleader bond.

The plaintiff offered testimony to prove that the words "with interest," interlined between the lines of the agreement, were inserted at the time of its execution, as an agreement to pay rent for the use of the looms pending the purchase. Objected to. Objection sustained. Exception. (First assignment of error.)

The defendants offered no testimony and the court charged the jury as follows :

"The agreement between Mr. Forrest and Mr. Andrews is in writing. It is entirely a question of law upon the construction of that agreement. My view of the agreement under the law is, that as to creditors, there was a sale of the property in question by Forrest to Andrews, and that it became subject to the claims of the execution creditors of the latter. Under this view, your verdict should be for the defendants." (Second assignment of error.)

Verdict and judgment for defendants ; whereupon Forrest took this writ assigning for error the refusal to admit his evidence, as above, and the charge of the court.

*Geo. W. Harkins*, for plaintiff in error.—The evidence re-

jected was an offer to prove by a subscribing witness to the contract, that at the time of its execution the words " with interest " were inserted as an agreement to pay rent for the use of the looms pending their purchase, and it was clearly admissible : Greenawalt *v.* Kohne, 4 Norris, 375 ; Barnhart *v.* Riddle, 5 Casey, 92 ; Wingate *v.* Mechanics Bank, 10 Pa. St., 104 ; Dubois *v.* Bigler, 14 Norris, 203. The contract between Andrews and Forrest was one of bailment and was not a conditional sale. It will be found that without exception whenever the contract has been held to be one of conditional sale, it has been in cases where there has been an actual sale and delivery of the property thereunder, with an agreement that the ownership should remain in the vendor as security for the payment of the purchase money : Martin *v.* Mathiot, 14 S. & R., 214 ; Rose *v.* Story, 1 Barr, 190 ; Haak *v.* Linderman, 14 P. F. S., 499 ; Stadtfeld *v.* Huntsman, 11 Norris, 53 ; Brunswick *v.* Hoover, 14 Norris, 508.

On the other hand, in those cases where the court has held the contract to be one of bailment, commencing with Clark *v.* Jack, 7 Watts, 375, and ending with the recent decision in Edwards *v.* Stranghellan, 9 Out., 103, the agreement is to sell at a future day, and delivery in the meantime is as a loan, or hiring, or for use, subject to be turned into a sale by compliance with certain conditions, and in all these cases the court has held that there was " no touch of fraud, and the title must be taken to have been according to the ostensible purport of the contract : " Lehigh Coal and Nav. Co. *v.* Field, 8 W. & S., 232 ; Enlow *v.* Klein, 29 P. F. S., 488 ; Rowe *v.* Sharp, 1 Id., 26.

*Francis E. Brewster* (with whom was *John J. Clarke*), for defendants in error.—The agreement states that Forrest " has agreed to sell." The vendee covenanted, 1st. To insure the looms in the name of the vendor. 2d. Not to remove them without the consent of the vendor. 3d. To punctually pay the quarterly instalments, and on default, to return to the vendor the looms remaining unpaid for, and upon his failure to pay, the vendor was to have the right to take possession of the looms remaining unpaid for.

The agreement, therefore, contains every element of a conditional sale and not a single element of a bailment. This was simply a sale of the looms by Forrest to Andrews upon one year's credit, with a stipulation that Andrews would insure the property and would not remove the looms. All the provisions of the agreement merely constitute remedies to enforce performance on the part of the vendee, and on failure of which to provide satisfaction to the vendor. Where an agreement

contemplates the transfer of personal property and the return of money, or the return of anything but the specific article, it is a sale:" Benjamin on Sales, 3 Am. ed., page 5. If Andrews had fulfilled his covenants, Forrest could not have reclaimed the looms. Forrest's motive was to effect a future sale conditional upon the payment of the price, and the attempted separation of the title from the possession was unlawful, as to bona fide purchasers: Martin v. Mathiot, 14 S. & R., 214; Myers v. Harvey, 2 P. & W., 478; Jenkins v. Eichelberger, 4 W., 121; Mitchell v. Comth., 1 Wr., 187; Chamberlain v. Smith, 8 Id., 431; Becker v. Smith, 9 P. F. S., 469; Euwer v. Van Giesen, 6 W. N. C., 363.

The court was clearly right in excluding the evidence referred to in the first assignment of error. If a witness could be allowed to interpret the words "with interest" as meaning rent, why should he not be permitted to interpret other parts of the contract to suit the purposes of the plaintiff in error? As a matter of fact the agreement was executed in duplicate, and in one copy the words "with interest" were written out in full, while in the other they were omitted by accident and afterwards interlined.

Mr. Justice STERRETT delivered the opinion of the court, February 16th, 1885.

By virtue of an execution issued by Nelson Bro's. & Co. the sheriff levied on certain weaving looms which he found in the possession of J. Charles Andrews, the defendant in the writ. The property thus levied on having been claimed by John Forrest, this feigned issue, under the Sheriff's Interpleader Act, was directed to determine whether, as against the execution creditors, Nelson Bro's. & Co., the property belonged to the claimant or not. The burden of proving title in himself, at the date of the levy, was of course on Forrest, the plaintiff in the issue. He undertook to do this by showing that, as admitted owner of the looms in question, he entered into a written contract with Andrews on January 27th, 1880, whereby the latter obtained possession of the looms on the terms and conditions therein specified, and continued to so hold them until they were levied on by the sheriff as his property. The contract was given in evidence and speaks for itself.

Plaintiff's contention was that the contract is in effect a bailment, and consequently the looms, in the possession of Andrews as bailee, were not liable to seizure and sale on an execution against the latter; but the learned judge of the Common Pleas construed it differently, and charged the jury as follows: "The agreement between Mr. Forrest and Mr. Andrews is in writing. It is merely a question of law upon

the construction of that agreement. My view of the agreement under the law is that, as to creditors, there was a sale of the property in question by Forrest to Andrews, and that it became subject to the claims of the execution creditors of the latter. Under this view your verdict should be for the defendants." This instruction is the subject of complaint in the second specification of error; but the very learned and able argument of plaintiff's counsel has failed to convince us either that the case did not properly resolve itself into a pure question of law, or that the question was not rightly decided.

It is very evident the case hinged on the construction of the written contract, and according to all the authorities, that was for the court, and not for the jury. If the agreement, properly construed, constituted a bailment, the title to the property levied on never passed to the defendant in the execution. On the other hand, if it is a conditional sale, the plaintiff had no title which he could successfully assert as against execution creditors of his vendee. A present sale and delivery of personal property to the vendee, coupled with an agreement that the title shall not vest in the latter unless he pays the price agreed upon at the time appointed therefor, and that in default of such payment the vendor may resume possession of the property, is quite different in its effect from a bailment for use, or, as it is sometimes called, a lease of the property, coupled with an agreement whereby the lessee may subsequently become owner of the property upon payment of a price agreed upon. As between the parties to such contracts, both are valid and binding; but, as to creditors, the latter is good, while the former is invalid. In some cases the line of demarcation between a conditional sale and a bailment is not very clearly drawn; but, in the case at bar we think the controlling features of the agreement are those of a sale. It recites that Forrest, the plaintiff, " has agreed to sell" eighteen weaving looms to Andrews " for the price or sum of $2,100, to be paid in four equal instalments or payments of $525 each, with interest: the first to be made on the 30th day of April, 1880; the second on the 31st day of July, 1880; the third on the 27th day of October, 1880, and the fourth and last on the 27th day of January, 1881." It also provides for immediate delivery of the looms to Andrews, " for use by him in his said business," and that, upon payment of each instalment, a bill of sale for so many of the looms as shall be equal to the amount thereof shall be executed and delivered to Andrews; that the " looms and every of them shall be and remain the property of the party of the first part (Forrest) until paid for by the prompt payment of the quarterly instalments as aforesaid."

Andrews covenanted to insure the looms in Forrest's name; to not remove them without his consent; to punctually pay the quarterly instalments, and, in default thereof, to return the looms that were not paid for. It further provides that, in the event of Andrews failing or neglecting to keep and perform all and every his covenants and agreements, it shall be lawful for Forrest to take possession of the looms then remaining unpaid for.

It thus appears that the contract possesses all the features of a conditional sale,—a sale of the looms on a credit of three, six, nine and twelve months, coupled with provisions for the purpose of enabling the seller to enforce payment of the price agreed upon, and, failing in that, to resume possession of the property.

In principle the case is not distinguishable from Haak v. Linderman, 14 P. F. S., 499; Stadtfeld v. Huntsman & Co., 11 Norris, 53; Brunswick and Balke Co. v. Hoover, 14 Id., 508, and several other cases. The agreement, which in the first case was construed to be a conditional sale, was as follows; "Haak doth covenant and hath sold and doth agree to deliver to Palm, a certain house car for which Palm agrees to pay $600, (in specified instalments.) The said Haak reserves the right from said car until fully paid, but said Palm shall have the use of said car from this date. Should said Palm fail to comply with this agreement, the said Haak shall have the right to take the said car from said Palm as his property, and said Palm will forfeit the amount paid on said agreement." The agreement in Stadtfeld v. Huntsman & Co. supra, was of similar import. The defendants in error agreed to sell household furniture to Carpenter, who receipted for the same and agreed to pay not less than $5 per week until the price agreed upon was paid; the goods "to be and remain the property of Huntsman & Co. subject to removal by them or their order, upon" his failure to make either of the weekly payments. Carpenter having received the furniture under this agreement afterwards sold it to Stadtfeld, an innocent purchaser without notice. In an action of replevin, brought by Huntsman & Co. against him, we held that the transaction between Huntsman & Co. and Carpenter was not a bailment but a conditional sale, fraudulent and void as to creditors and innocent vendees of the latter.

In Brunswick and Balke Co. v. Hoover, supra, the transaction was substantially a sale of billiard tables upon credit, accompanied with a lease thereof as security for the payment of the price. It is there said: "Such a contract, while good between the parties, will not keep creditors at bay. It is worthless as to them. There is no principle of law better set-

tled in Pennsylvania than that a sale and delivery of personal property, with an agreement that the ownership shall remain in the vendor until the purchase money is paid, enables creditors of the vendee to seize and sell the same for the payment of his debts. It would be a needless labor to cite the numerous cases in which this doctrine has been asserted."

Some of the authorities relied on by plaintiff are admittedly close cases: and, while in some respects they resemble the one at bar, they are distinguishable from it: In Rowe *v.* Sharp, 1 P. F. S.; 27, and Enlow *v.* Klein, 29 Id., 488, both of which are on the border, the doctrine of bailment was carried to its extreme limit. Upon the facts peculiar to those cases respectively, they were doubtless decided correctly, but any further advance in the same direction would be unwarranted.

In Edwards *v.* Stranghellan, 9 Out., 103, Ward obtained possession of the hotel furniture by virtue of the lease, and as is there said, " the subsequent provision for a sale could not alter the character of that possession or change the nature of the contract resulting from it. His possession, being originally under the lease, determined the character of the transaction and fixed it, in the outstart, as a bailment; and, as he never complied with the conditions of the contract, under which alone he could have acquired title, the matter remained throughout as it began, a bailment."

The principles, underlying bailments and conditional sales, and by which every such agreement must be tested, in determining to which class it belongs, are so fully and clearly stated in the case last cited that repetition is unnecessary. Whenever it appears, from the contract between the parties, that the owner of personal property has transferred the possession thereof to another, reserving to himself the naked title thereof, solely for the purpose of securing payment of the price agreed upon between them, the contract is necessarily a conditional sale, and not a bailment; and while it is perfectly good as between the parties themselves, it is worthless as to creditors and *bona fide* purchasers from the transferee without notice. If the contract is verbal, it is, of course, the exclusive province of the jury to inquire, and ascertain what the parties meant; if it is in writing, its construction is for the court. Properly construed, and tested by the principles above stated, the contract in question was void as to the defendants; and hence the second specification is not sustained.

The plaintiff's offer " to prove, that at the time of the execution of said agreement between Forrest and Andrews the words, 'with interest,' were inserted as an agreement to pay rent," was rightly rejected by the court. The contract was

executed in duplicate.   In one of the duplicates, the words
" with interest," in the clause providing for the payment of
the four instalments of $525 each, etc., were written out in
full; in the other, they were interlined.   The language em-
ployed was neither doubtful nor ambiguous; and it needs no
citation of authorities to show that the learned judge was
clearly right in refusing to permit plaintiff to prove that inter-
est on quarterly instalments of purchase money meant rent, for
the use of the looms in controversy.   If such testimony were
admissible, written contracts would scarcely be worth the
paper on which they are inscribed.

Judgment affirmed.