Delco Ice Manufacturing Co., Appellant, *v.* Frick Company, Inc.

Argued January 15, 1935. Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

338

*John Martin Doyle,* with him *William Taylor,* for appellant.

*E. Wallace Chadwick,* of *Taylor, Chadwick & Weeks,* with him *Sterling & Willing,* for appellee.

OPINION BY MR. JUSTICE KEPHART, March 25, 1935:

The Frick Company entered into a written contract with the James Ice Manufacturing Company for the conditional sale of certain chattels, which were to be affixed to the realty of the James Ice Manufacturing Company. The original conditional sales contract was not filed, but a verified statement of the contract was filed in the prothonotary's office and indexed in the conditional sales docket, showing the contract dated March 3, 1926.

The Delco Ice Manufacturing Company, in 1929, for valuable consideration, purchased from the James Company the land, situate in Delaware County, with the buildings and improvements thereon erected, together with the machinery, appliances and operating equipment. The improvements included the machinery referred to in the conditional sales contract, which was attached to the buildings as part of the land. The Frick Company has, since the sale, demanded from the Delco

Company the balance of the purchase price on this machinery, with interest.

The statement of the contract filed in the prothonotary's office was defective and insufficient to charge the purchaser with constructive notice as it failed to contain a description of the real estate sufficient to identify it as the land to which the chattels were to be affixed. The Delco Company took a rule on the Frick Company to show cause why the verified statement of the contract should not be stricken from the record. The court below dismissed the petition, and this appeal followed.

As between the buyer and seller, a conditional sales contract has always been held good; but as to creditors of and bona fide purchasers without notice from the buyer, the contract has been held to be invalid: Forest v. Nelson, 108 Pa. 481, 488; Com. v. Bowers, 304 Pa. 253, 257.

The Act of May 14, 1925, P. L. 722,[1] regulates the pro-

---

[1] Section 1 provides that the reserved provision as to the title to chattels "to be attached to realty . . . shall be valid as to all persons, except as hereinafter otherwise provided"; section 3 that the "contract, or a verified statement thereof, shall be filed in the office of the prothonotary of the county wherein the realty affected is situate"—that "such contract, in order to entitle it to be filed, must be verified by the oath or affirmation . . . and if the contract does not contain a sufficient description for the identification of the realty affected, the verification must contain such description," and regarding the contents of the verified statement that it provides that "such statement in order to be entitled to be filed must set forth . . . [3] a description sufficient for identification of the chattels and the realty affected."

Section 2 provides that, "as against the owner of the realty to which chattels are attached, who is not a party to the contract, or has not assented to the reservation of property in the chattels, such reservation shall be void . . . unless the contract, or a verified statement thereof, shall be filed, as required in section 3, before the chattels are so attached to the realty"; and, "as against a subsequent purchaser, subsequent mortgagee, or other subsequent encumbrancer, of the realty for value and without notice of the reservation of the property in the chattels, such reservation shall be void as to any chattels so attached to the realty as to form a part thereof, un-

cedure necessary in filing conditional sales contracts. An innocent purchaser for value from a conditional vendee in possession acquires title as against the vendor, unless the latter has complied with the conditions of the Conditional Sales Act: Anchor Concrete Machinery Co. v. Penna. Brick & Tile Co., 292 Pa. 86.

The statutory requirements as to the contents of instruments by which a conditional sales contract is made must be strictly complied with, otherwise the instrument is not entitled to be recorded and does not constitute constructive notice: 55 Corpus Juris, page 1262, section 1272; In re Thaler, 1 Fed. (2d) 461.

Where a conditional sales contract is filed under the provisions of the Act of May 14, 1925, P. L. 722, and the contract violates the act in that it does not contain a description of the real estate affected, is a rule to show cause why the contract should not be stricken from the record the proper proceeding to be taken by a party affected by the contract?

Is the conditional contract a judicial record when filed in the prothonotary's office? Judicial records have been defined as those associated with the progress of litigated cases. Various other definitions have been given (see 15 Corpus Juris 971; 23 Ruling Case Law, 156; Words and Phrases, volume 3, page 335), but in substance all agree that it relates to litigation present or prospective. In this State we have distinguished between a judicial record and a record made pursuant to a statute in the office of the recorder of deeds for the purpose of giving constructive notice. In Brown v. Henry, 106 Pa. 262, 267, it was said: "But his record in such case, though called a record, lacks the element of verity which exists where a record is made up by an officer of the court and under the eye of the court, after hearing the

less the conditional sale contract, or a verified statement thereof, shall be filed, as required in section 3, before such purchase is made, or such mortgage is given or such encumbrance is effected."

parties." In Fleming v. Parry, 24 Pa. 47, 52, it is stated: "A record it undoubtedly is, but not a record to which that maxim applies, the proper application of which is to judicial records—those which are potentially if not actually made up under the eye of the judge, in the presence of the parties, and after hearing them; and these are kept by the custos rotulorum, and not by the recorder."

Since the purpose of filing the contract was to give constructive notice of the reservation of title to subsequent purchasers (see section 2 of the act; 55 Corpus Juris 1263), it is argued that the paper, when filed, would be subject to the doctrines applicable to deeds, mortgages, etc., recorded in the recorder's office. There are many reasons why this analogy is not correct.

Under the provisions of the statute, it is directed that the instrument be filed, not recorded, and the word "filed" is customarily used in connection with judicial documents. It is to be filed in the office of the prothonotary. Prothonotaries are public officers upon whom many duties may be imposed by the legislature, and they may have control of documents similar to those filed with the recorder of deeds. But when a paper is directed to be filed in the prothonotary's office, the act may give the record a quasi judicial character.

Section 23 of the Act of April 14, 1834, P. L. 333, provides for the appointment of a prothonotary and clerk, or clerks, for each of the courts, who shall have custody of the records and seal of the court, and keep them at the place where court is held. Subsequent sections of the same act define the powers and authority of the prothonotary and clerks, none of which indicate that they perform other than judicial duties.[2]

---

[2] The other statutes relating to the duties of prothonotaries, particularly the maintenance of dockets, confirm this conclusion: see Act of March 29, 1827, section 3; 9 Smith Laws 319 (Maintenance of Judgment Dockets); Act of May 28, 1915, P. L. 614 (Maintenance of Ad Sectum Index); Act of May 22, 1878, P. L. 95, section 1, as amended June 19, 1913, P. L. 531, section 1; Separate docket

The Act of 1925, P. L. 722, further provides that an abstract of the contract shall be entered in a "conditional sales docket" and "shall be indexed in said docket by placing the name of the buyer in a column for defendants and the name of the seller in a column for plaintiffs," thus indicating that it was the intention of the legislature to simulate the filing of the contract to the entry of a suit in the prothonotary's office, otherwise the designation of the "plaintiff" and "defendant" would be meaningless. Section 4 of the act requires that the fees for filing, indexing and other services shall be the same "as for like services in connection with mechanics' liens," which are judicial proceedings. It would follow that the provisions of the Act of 1925 would confer on a filed conditional sales contract a character different from that of an agreement or deed filed in the recorder's office, and it would have the characteristics of a judicial record in the office of the prothonotary.

It is unnecessary to discuss the question that every court has absolute control over its own records and may amend, correct, expunge or otherwise control them, and the question remains as to whether a rule to show cause is the proper procedure to correct the wrong done. The question has been made more difficult by the quotation from former Chief Justice MITCHELL's book on "Motions and Rules at Common Law," where it is stated: "A rule is not properly original process in any case but is auxiliary and for the facilitating of jurisdiction already acquired." No authority is cited to support that statement, which is reprinted in Woodward on "Motions and Rules" [1934 edition]. The Superior Court in Short v. School District, 108 Pa. Superior Court 503, made use of the statement, but the matter at issue was clearly not a court record, it involved a question of exemption from the payment of certain taxes.

---

for lunatics, habitual drunkards, decrees of divorce, etc.; Ejectment and miscellaneous dockets; and see other dockets listed in Purdon, Title 17, sections 1901 et seq.

In discussing rules to show cause, in Park Bros. & Co. v. Oil City Boiler Works, 204 Pa. 453, Justice MITCHELL says: "The enlarged operation of rules is a somewhat peculiar and very admirable feature of Pennsylvania jurisprudence, growing largely out of the administration of equity through common law forms. It was early held that remedy by rules had supplanted the ancient audita querela and writ of error coram nobis, and the constant tendency of modern practice has been to enlarge rather than to restrict their operation. No serious disadvantages have as yet been perceived and the convenience is such that the legislature has in some cases, . . . carried rules beyond their natural and legitimate province and clothed them with the office of original process."

There are cases in Pennsylvania where rules have been used as original process. In Seigler v. Ripple, 16 Lancaster Law Review 236, a rule to show cause was used, without objection, for the purpose of striking off a mistaken entry of satisfaction of a mortgage. In In re Meloy Mortgage, 8 Dist. Reports 364, a rule to show cause was taken to strike off a release of a mortgage. A case almost in point, and one which would seem to be authority for the present proceeding, is Macoluso's Naturalization, 237 Pa. 132. The proceeding was started by a petition and rule for the cancellation of a certificate of naturalization. The court there stated: " 'No judgment or decree of this court was ever made naturalizing the said Calogero Macoluso, who is now dead; nor was any certificate ever issued by this court or under its authority certifying such naturalization, but the said certificate in the possession of the said John Macoluso is a forged and fraudulent certificate bearing the seal of this court without its authority.' Under these facts, the court had the power, and it was its duty to adjudge the certificate to be void and compel its surrender for cancellation. The certificate was not sustained by any record or entry of the court, and is therefore a nullity." While we did say that this was not an original proceeding,

it is difficult to see why it was not an original proceeding for the purpose of cancelling a forged document. There was no record of any kind on the dockets or records of the court, and the petition and rule were issued to show cause why the certificate in the hands of an individual should not be surrendered for cancellation. We there stated: "It is clear, therefore, that the court had the authority to prevent the continued fraudulent use of its seal by requiring the surrender of the certificate of naturalization which was a forgery and not authorized by a judgment or decree of the court." There are no restrictions on the procedure by which the courts may correct their records.

We approach the question from the position of the court, and not entirely from that of the litigants. A paper is filed in the office of the prothonotary which strikes directly at the common law right relating to fixtures to real estate. It gives the vendor in that contract a very strong position. It invades the common law. Conditional sales contracts are being used exclusively in the State, and requires purchasers of real estate to go to the prothonotary's office and ascertain if such contracts are filed and if there is a reservation of title in part of the land, viz., the chattel affixed to the real estate. It is more than an encumbrance which may be divested by sale. It follows the land. It is absolutely imperative then that, before such contracts can be filed, rigid compliance with the law and a speedy and effective remedy should be given purchasers and creditors who are in ignorance of the existence of such contracts.

Moreover, courts have an interest in keeping their own records clear and should be free to adopt, without restriction, whatever measure or procedure is necessary for the purpose of correcting these records, so long as constitutional rights or statutory provisions are not violated.

Appellee argues that the party to be affected must be in court within contemplation of the law, either actually

or constructively as an officer of the court, including attorneys, inferior magistrates, etc. But the Frick Company was actually or constructively in court in all matters which pertained to the filing of the conditional sales contract. Where one puts in motion the process of a court, or seeks to use the procedure of the court for the purpose of obtaining a benefit for himself, jurisdiction is conferred over him so far as the defendant in the proceeding or the court is concerned.[3]

Appellee states in his argument that since the plaintiff has no remedy he can have no right. He argues that a rule to show cause will not lie, and cites the lower court's opinion to show that a bill in equity to remove a cloud on the title would not lie. Therefore, if it lacks a basic right to any remedy, "we thought that this issue might as well be disposed of now as later." There is "no wrong without a remedy."

While the Act of 1925 provides no procedure for expunging contracts from the records which are filed in violation of the act, this court, if it is necessary, may find within section 3 of the Act of June 16, 1836, P. L. 784, a remedy, and under it may invent a new proceeding for the purpose of accomplishing a just result: see Vinnacombe v. Phila., 297 Pa. 564. Moreover, if equity had jurisdiction there is nothing in the Act of 1836 which states that the remedy there would be exclusive. This court has repeatedly recognized that equity is not exclusive in enforcing plaintiff's rights: Coates v. Cotteral, 290 Pa. 237; McClenachan v. Malis, 310 Pa. 99; Bashford v. West Miami Land Co., 295 Pa. 560; cf. Myers v. Fidelity-Phila. Trust Co., 290 Pa. 283. We conclude, therefore, that the action was proper.

The question of service was discussed, but as Frick

[3] See 15 C. J. 798, section 95; Security Finance Co. v. Tindall, 151 Miss. 516; Vincent v. McElvain, 304 Ill. 160; Shorter v. Shorter, 150 Ga. 109; Barner v. Barner, 19 Ohio App. 458; Leman v. Krentler-Arnold Co., 284 U. S. 448; Schibsby v. Westenholz, L. R. 6, Q. B. 155.

Company voluntarily appeared, we need not pass further on that question. However, in this connection we call attention to the Act of May 17, 1921, P. L. 899: see Carey v. Carey, 22 D. & C. 177. We need not discuss other features of this act as to conditional sales contracts, where the indexing is not required to be done as it is in cases where the articles sold are to be affixed to realty.

Attention is further called to the fact that the Act of 1925, P. L. 722, was repealed by the Act of 1927, P. L. 979, and we express no opinion as to the contracts filed under this latter statute, as the requirements there are different from those under the Act of 1925.

The court below should have made the rule absolute, striking the contract from the record as it appertains to this particular property. Whatever rights the original parties may have had between themselves under the contract is in no way affected by this order.

The judgment is reversed and a procedendo is awarded.