**In re Collection of County Fines, Costs and Restitution**

Before Sweet, PJ., DiSalle, Gladden and Bell, JJ.

*Thomas B. Kostolansky,* for clerk of courts.

SWEET, *P.J.,* July 22, 1976 — Thinking on this subject should begin with the Act of April 14, 1834, 3 P.L. 333, 17 P.S. §1483, which says: "A prothonotary or clerk shall be appointed and commissioned for each of the said courts he shall have the custody of the records and seal of the respective court, and keep the same at such place of holding such court and in the apartments provided, by authority of law, for that purpose, and he shall faithfully perform, *under the direction of the court, all the duties appertaining to his office."* (Emphasis supplied.)

This has been construed a few times. It was held in Delco Ice Manufacturing Co. v. Frick Company, Inc., 318 Pa. 337, 178, Atl. 135 (1935) that:

"Moreover, courts have an interest in keeping their own records clear and should be free to adopt, without restriction, whatever measure or procedure is necessary for the purpose of correcting these records, so long as constitutional rights or statutory provisions are not violated."

See also: Cardello v. Fleming, 43 D. & C. 367 (1941), to the same effect.

The Act of March 31, 1860, P.L. 427, sec. 78, as amended, 19 P.S. §951, says this: "All fines imposed upon any party, by any court of criminal jurisdiction, shall be decreed to be paid to the Commonwealth, *but the same shall be collected and received, for the use of the respective counties in which such fines shall have been imposed*

*as aforesaid, as is now directed by law.*" (Emphasis supplied.)

The Act of May 17, 1917, P.L. 199, 19 P.S. §953, says this:

"Any person sentenced to pay a fine or to pay the costs of any criminal proceeding against him, either in addition to or without a term of imprisonment, under any act of Assembly or municipal or borough ordinance, may, in the discretion of the sentencing authority, be given leave to pay such fine or costs by instalments."

Note it says "in the discretion of the sentencing authority," not of the clerk of courts.

In a typical month's business, January, 1976, the office handled $3,450.52 in county fines, $4,794.83 in county costs, $969.70 in supervision and $2,401.65 in restitution, all of which, under our system here were to be paid into the adult probation office. State fines were received in the amount of $180.20. Thus, it will be seen in that average month's business, Mr. Petrosky's interest as recited by his letter of January 26, 1976, is limited to .02 percent of the money involved. Even the act which he cites himself, Act of May 9, 1949, P.L. 919, 17 P.S. § 1500.2, speaks of items payable to the Commonwealth for the use of the Commonwealth and *not for the use of the county.* This very section also says: "Nothing contained herein shall impair the right of the courts to moderate or remit forfeited recognizances as heretofore."

It will readily be seen, therefore, that in his letter of the 26th of January, he has the tail wagging the dog.

Perhaps the clerk's understanding of the situation comes from a reading of 16 P.S. § 384, Act of May 2, 1929, P.L. 1278, art. IV, sec. 384. This did

give the clerk some activity in the field. However, it was repealed in 1955 and under the Act of August 9, 1955, P.L. 323, 16 P.S. §1737, the clerk's only authority is to certify and estreat the same to the Commissioners, not to handle money.

The opinion of the Attorney General, Fines Under Vehicle Code of 1929, printed at 20 D. & C. 28 (1933), says this:

"To summarize, you are advised as follows:

1. Except where a writ is issued to the sheriff to levy and collect a fine, the clerks of court or, where directed by the court, the parole or probation officers are the only officers properly authorized to receive payment of fines imposed by the court of quarter sessions for violation of The Vehicle Code. None of these officers is entitled to deduct any fee when transmitting fines collected for the use of the State."

Early in the discussion on page 30, the Attorney General said this:

"We have no doubt, however, that the court can direct that fines be received by probation officers. Probation officers are appointed under the authority of the Act of June 19, 1911, P.L. 1055, as amended June 21, 1919, P.L. 569. These officers are appointed by the court to perform such duties as the court may direct. Likewise, desertion probation officers, appointed under the authority of the Act of June 12, 1913, P.L. 502, are authorized under the direction of the court to collect and pay over to the person entitled thereto money ordered to be paid by the defendant.

"In many instances, it is highly desirable to have the cases handled by probation officers kept entirely separate from the other business and officers of the courts. That the legislature recognized the

right of probation officers to receive money is evidenced by the Act of June 9, 1931, P.L. 401, sec. 12, adding a new section to the county code and directing that the county comptroller or auditor should audit the books of parole and probation officers."

The advantages of having the fines collected by the probation officers is set forth in a note in the University of Pennsylvania Law Review, 101 U. Pa. Law Rev. 1013 at p. 1029:

"It is particularly important that the fine be coordinated with probation wherever the latter is needed and the former is possible; for, as previously stated, the few statistics available have demonstrated the efficacy of this practice in selected cases. It has been asserted that criminals whose dominant characteristic is an 'opportunist acquisitiveness' comprehend a pecuniary penalty more readily than any other; and that 'pseudo-alcoholics' and playboys will be less likely to repeat when fines deprive them of the wherewithal to pursue their pleasures. Therefore, when such men are adjudged deserving of probation, fines may be particularly helpful in effecting reformation. Certain it is, however, that insensitive, repetitive emphasis on the necessity of payment may in some instances disturb that 'delicate case work relationship of confidence, sympathy and understanding,' which, it is claimed, probation work attempts to establish. For that reason alone, it is essential that the probation departments be vested with the power of supervising payments by their charges, for these departments are most competent to judge whether a fine continues to be beneficial in a given instance. Where it does not, the probation officer should be authorized to recommend remission to

the court. If this officer has no such supervisory duties, he may suddenly discover that an otherwise rehabilitated probationer has been committed for nonpayment of his fine. There have been vociferous objections to making collection agents out of probation officers. If these objections are primarily to the administrative burden, additional facilities are a ready solution; if they are directed to the possible impairment of the relation between the offender and the probation officer, his recommendation of remission can foreclose that danger whenever it threatens."

We think that the collection of fines and costs due the county is probably in the hands of the Adult Probation Office pursuant to the long-standing custom in Washington County.*

## COSTS

Since the county is the real party in interest in all costs accruing in the criminal courts, it is the duty of the county commissioners to supervise the collection of those costs from the persons liable: In re Collection of Fines, Costs, Forfeited Bail and Recognizances, 76 D. & C. 456 (Lycoming 1950.) This follows, since the county is required to pay the costs of prosecution in all cases. For example, the

---

*For instance the report if F. H. Mitchell, Adult Probation Officer of Washington County, Pennsylvania, filed at 202 November Term, 1919 (the earliest we could find) says this: "During the year, we have collected $29,895.67, of this amount we have paid into the County Treasury $23,267.40, and to various persons we have caused to be paid into the County Treasury over $2,000 in the adjustment of cases that were settled and the defendants not placed on parole or probation." Judge McIlvaine endorsed it on to the Commissioners with words of approval and also ordered the report printed, January 16, 1920.

Act of May 11, 1874, P.L. 132, as amended, 19 P.S. § 1224, provides that the county shall pay the costs forthwith in all felonies, and the Act of May 19, 1887, P.L. 138, as amended, 19 P.S. § 1225, provides likewise for misdemeanors.

## FINES

In a similar manner the county is the real party of interest for the collection of fines imposed by the court pursuant to the Act of March 31, 1860, P.L. 427, as amended, 19 P.S. § 951, which provides: "All fines imposed upon any party, by any court of criminal jurisdiction, shall be decreed to be paid to the Commonwealth; but the same shall be collected and received, for the use of the respective counties. . .as is now directed by law."

Later statutes have modified this so that there are some fines to be paid to the Commonwealth and in that limited group of fines, the clerk of courts is required to collect them as agents of the Commonwealth. But even in those cases where the fine is collectible on behalf of the Commonwealth, the costs are still to be taken first and those are collected by the adult probation office pursuant to the custom: Act of July 15, 1935, P.L. 1002, 19 P.S. § 1296. For a general review of the subject see In re Collection of Fines, supra.

Obviously, the probation officer must know the status of the probationer's account. The Act of August 6, 1963, P.L. 521, 19 P.S. §1091, says:

"Probation officers heretofore or hereafter appointed by any court of record of this Commonwealth are hereby declared to be peace officers, and shall have police powers and authority throughout the Commonwealth to arrest with or without warrant, writ, rule or process, any person

on probation or parole under the supervision of said court for failing to report as required by the terms of his probation or parole or for *any other violation of his probation or parole."* (Emphasis supplied.)

16 P.S. §1722, in listing the duties of the controller, says this:

"It shall be the duty of the controller or county auditors to audit, settle and adjust the accounts of every parole and probation officer, appointed by the court pursuant to law, who shall receive from any person or persons moneys paid under any order, sentence or judgment of any court, and to report the results of such audits to the court which shall have appointed such officer. The controller or county auditors shall likewise audit, settle and adjust the accounts of any moneys appropriated by the county to units of the National Guard."

The Act of July 28, 1953, P.L. 723, 16 P.S. § 3420, lists those who shall be bonded. Item number eleven thereunder speaks of the probation and parole officers required by order of court to give bond to the county. Obviously, therefore, the legislature contemplates these people will receive and handle money. They are authorized to collect it; they are required to give bond; and they are to be audited by the controller, as seen above.

The longevity of this system we now have is shown in a tome titled " Inventory of the County Archives of Pennsylvania," Number 63, Washington County, prepared by The Pennsylvania Historical Survey Division of Community Service Programs Work Projects Administration. Chapter XIV, Probation and Parole Officer, subtitle "Powers and Duties" which reads as follows:

"Probation officers must perform whatever duties the court of quarter sessions directs. The

law suggests that they attend court whenever cases are heard concerning the persons under their charge. They must secure any information requested by the court. Their chief duty, however, is to keep informed about the condition and conduct of their charges. This is usually achieved by requiring the persons to report to the officer periodically. Desertion probation officers may be required to collect support orders and to deliver them to the designated recipients.

"Probation officers must keep accounts which are open to the inspection of the controller. The results of these examinations must be reported to the court of quarter sessions. The officers are obliged to prepare for the Department of Welfare any reports which it request."

On page 249 it says: "The probation and parole office has also preserved receipts for fines and costs returned by the probation officers since 1925 and correspondence relating to persons on parole." The supporting cases of documents inventoried in the Archives shows that for the period of 1914 to 1931, we have ". . . names of parolee, attorneys, judge, magistrate, and arresting and parole officers; charge; period of parole; *dates and amount of fines and costs received by parole officer* and returned to treasurer . . ." (Emphasis supplied.)

These are set up in ten volumes of 500 pages apiece and apparently take the continuation of this practice back to 1914. It is apparent from reading that the parole system began in 1911. Item 295 described on page 250 of the archives includes seven volumes listing case history of persons on parole and probation, showing court term and case no.; charge, name, address, marital status, age, occupation, place of employment, and earnings of

defendant among other things, but is not exactly indexed. Item 302, page 251 is three volumes, Treasurer receipts of fines and costs returned by parole officer, showing date, no., court term, payer, amount of fine and cost, total, signature of treasurer, and countersigned by controller, arranged chronologically by date of receipt. This would seem to establish beyond a reasonable doubt that at least since 1925 and probably since 1914, this system has been exclusively followed. Since there is a presumption that official duty is regularly performed, I think that we can assume since 1914, there has been an agreement of some sort between the commissioners and the court that the adult probation office would collect fines, costs, restitution and supervision.

Judge Brownson seemed to recognize this arrangement in an opinion dated October 18, 1937: Commonwealth v. Endler, 19 Wash. Co. 85. Judge Brownson authorized:

". . . E. G. McGregor, Parole Officer of this Court, to procure and cause the entry in the Court of Common Pleas of this county of a confession of judgment against Louis Endler and Romano Rossi upon said recognizance, in pursuance of and in accordance with the terms and conditions contained in the warrant of attorney which is embraced in said recognizance, and thereupon to procure and cause to be issued upon such judgment execution process for the collection from the defendants therein of the sum of $500, with interest from the date of the judgment; and the clerk of this court is directed to deliver said recognizance to said Parole Officer to the end that such proceedings as are above specified may be had thereon. All moneys that may be collected upon such judgment

shall be paid to E. G. McGregor, Parole Officer, who shall distribute and apply the same as he may by this court be directed to do." A reading of the rest of the opinion makes it clear that this case was mixed desertion and nonsupport of one person and assault and battery upon another man.

The Act of May 9, 1949, P.L. 919, 17 P.S. §1500.1, defines the Clerk of Courts as one would expect and immediately thereafter, defines the word "fines" as follows:

" 'Fines' shall mean fines, forfeited recognizances and other forfeitures imposed, lost or forfeited into any court, payable to the Commonwealth for the use of the Commonwealth and not for the use of the county."

The next section goes on to say the clerk of courts shall, as an agent of the Commonwealth, transmit such things which are *not* for the use of the county to Harrisburg. The rest of the act describes the settlement techniques and auditing techniques. It seems clear to me that the adult probation office under our system, therefore, is acting as an agent for the county in collecting fines, costs, supervision and restitution which is due the county and the clerk is in our courthouse as an agent of the Commonwealth in this area.

Dudley v. Washington County, 39 Pa. C. C. 377 (1912), by McIlvaine, P.J., explains at some length how after the county has collected fine, costs, etc., the pardon of an offender by the Governor does not affect the payments already made and turned in to the county. The Governor can no more demand that the county send its moneys to him upon pardon than he can limit the time. This is a good explanation of the distinction between the Com-

monwealth and the county as a recipient of costs, fines and the like.

The late Judge Gibson decided Commonwealth v. Rathbone, Jr., which appears at 23 Wash. Co. 53 (1941). This case is not cited for the point of law about distribution of a bondsman's money, but for the history ". . . an order was made authorizing the settlement of the judgment of $1000.00 for $850.00, directing the County Commissioners upon the payment of that sum to assign the judgment of Sam Intravartolo the bondsman, and directing distribution of the sum to the payment of the medical and lying-in expenses and costs, and that the balance be paid to the Court Probation Officer, 'and the said Probation Officer is hereby authorized and ordered to pay to such person as shall maintain such bastard child the sum of $2.50 per week for the support and maintenance of the child' . . . The bondsman paid over the sum of $850.00, the judgment was assigned to him, and the money was distributed in accordance with the order, the balance being $663.15, which was paid to the court probation officer, and from which he has since paid out $127.50, leaving a balance of $535.65 in the hands of the probation officer on February 28, 1941."

This shows plainly that Judge Gibson expected costs, restitution and support to go through the probation officer. No mention is made of the clerk of courts in this matter.

Thus history, reason, social policy, the statutory law and the case law, all support the contention that the adult probation office collect the fines due the county, the costs, the restitution and supervision. This gives the lie to certain hysterical reports recently published and necessitates the following

## ORDER

And now, July 22, 1976, it is hereby ordered that the adult probation office continue all collection of costs and fines due the County of Washington, and supervision and restitution.

It is further ordered that the clerk of courts, effective immediately, assume the responsibility only for collection of all fines payable the Commonwealth of Pennsylvania for the use of the Commonwealth of Pennsylvania and not for the use of the county as required by acts of assembly hereinbefore described.