## Commonwealth *v.* Bixler, Appellant.

*Criminal law—Fraudulent conversion—Money loaned—Act of May 18, 1917, P. L. 241.*

One who borrows money cannot be convicted of fraudulent conversion of the funds loaned to him even though he may have had no intention of paying the loan.

The Act of May 18, 1917, P. L. 241, makes the fraudulent conversion of property a misdemeanor, but it is essential that the property shall have belonged to another.  The act has no application to a failure by a borrower to fulfil his contract to repay money loaned to him.

Argued April 20, 1922.  Appeal, No. 147, April T., 1922, by defendant, from judgment of Q. S., Fayette Co., June Sessions, 1921, No. 137, on verdict of guilty, in the case of Commonwealth of Pennsylvania v. Ira C. Bixler.  Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.  Reversed.

Indictment for fraudulent conversion.  Before WORK, P. J. of O. C., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were the judgment and sentence of the court, various parts of the charge, and rulings on evidence.

*S. J. Morrow,* and with him *R. M. Carroll,* and *A. E. Jones,* for appellant.—There was no evidence of unlawful conversion, since the money was loaned to the appellant he could not be convicted of its conversion: Com. v. Harris, 168 Pa. 619.

*H. E. Hackney,* and with him *Brownfield & McDaniel,* and *Wm. A. Miller,* District Attorney, for appellee.

OPINION BY TREXLER, J., July 13, 1922:

The defendant was found guilty of a violation of the Act of May 18, 1917, P. L. 241, the title of which is "making the fraudulent conversion of property or the proceeds of property a misdemeanor, etc." The portion of the act which defines the crime reads as follows: "Any person having received or having possession, in any capacity or by any means or manner whatever, of any money or property, of any kind whatsoever, of or belonging to any other person, firm, or corporation, or which any other person, firm, or corporation is entitled to receive and have, who fraudulently withholds, converts, or applies the same, or any part thereof, or the proceeds or any part of the proceeds, derived from the sale or other disposition thereof, to and for his own use and benefit, or to and for the use and benefit of any other person, shall be guilty of a misdemeanor, etc." A subsequent section of the act states that it is the intent of the act to define and punish a distinct and separate misdemeanor.

The testimony produced by the Commonwealth, which we must accept as verity, was substantially as follows: on July 22, 1920, the defendant called to see the prosecutor stating (quoting the prosecutor's language) "He was going to option coal and needed the money right down and said if I would loan him the money, he would sell the oil stock and return me my $500 within six weeks and give me the one thousand shares in the clear." The contract was reduced to writing and signed by the defendant. It reads as follows:

"July 22, 1920.

"In consideration of the sum of $500, I. C. Bixler, agrees to deliver to said Hoyt Fullem of the State Penna., County of Fayette, 1,500 shares of Ryan and Fisher Refining and Producing Company, the par value of $1 each as soon as certificates are delivered. It is further understood that I. C. Bixler, said party of the first part, shall sell 500 shares and reimburse said Hoyt Fullem in the sum of $500."

The certificate for the 1,500 shares of stock was afterwards delivered to the prosecutor. There is no doubt that the $500 given to the defendant was loaned to him, this is reiterated in the testimony of the prosecutor. The crime of which the defendant is accused, as stated in the charge of the court, is that the defendant "went to the prosecutor to get the money without any intention or purpose of ever paying it." The defendant is not charged with obtaining money under false pretenses but with converting to his own use money belonging to another. The defendant did not promise to return the money in kind. He had the undoubted right to use it as he saw fit, but at the end of six weeks he was to refund it out of the proceeds of 500 shares of the prosecutor's stock, which he was to sell for that sum. To revert to the act above quoted, the defendant did not receive any money or goods which belonged to any person other than himself. Whatever he may have done with the

Opinion of the Court.  [79 Pa. Superior Ct.

$500, he could not have been blamed for anything, had he sold the shares for $500 and paid the proceeds to the prosecutor. Thus his failure to keep his contract is the foundation of the charge. He, therefore, did not fraudulently withhold, convert or apply the money or the proceeds of any property, received into his possession, to and for his own use and benefit. The very purpose of his getting the $500 was to supply his own urgent needs. The law does not make the breaking of a contract a crime and does not punish one who borrows money, or obtains goods, because he has no intention of paying for them. The act, under which this defendant was indicted, both in its title and text, refers only to the conversion of property or the proceeds thereof where such property belongs to another. As stated before, when the defendant obtained the $500 that sum belonged to him absolutely without any condition that the identical money should be returned to the prosecutor. We are all of the opinion that the Commonwealth failed to establish the charge laid in the indictment.

The judgment is reversed and the defendant is discharged of his recognizance.