Commonwealth v. Overheim, Appellant.

Argued July 12, 1932.

Before
TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALD-
RIGE, STADTFELD and PARKER, JJ.

*F. Clair Ross* of *Brandon, Brandon & Ross,* for ap-
pellant.—To sustain a conviction for fraudulent con-
version it must be shown that the property alleged to
have been fraudulently converted was the property of
another. Commonwealth v. Rooney & Malatch, 26
Schuylkill, 332; Commonwealth v. Hillpot, 84 Pa.
Superior Ct. 454; Commonwealth v. Bixler, 79 Pa.
Superior Ct. 295.

*A. M. Christley,* and with him *W. H. Martin,* for ap-
pellee.

OPINION BY KELLER, J., October 10, 1932:
The appellant was indicted and convicted of the
fraudulent conversion of an automobile belonging to
one Paul J. Myers, contrary to the Act of May 18,
1917, P. L. 241. The evidence on the part of the Com-
monwealth—the defendant offered no testimony—

showed that Myers was the owner of a Graham Paige automobile. Appellant was a dealer, handling these cars. Myers was willing to trade in his automobile for a new model Graham, but this model was not yet ready for delivery, or at any rate appellant had none of them in stock on the floor. But he told Myers that if the latter would turn in his car at once he had a purchaser who would pay a better price than he could get later, and he would allow Myers a greater trade-in value than he could get a month or two later. Accordingly the parties agreed on March 31, 1931 that Myers should turn in his car that day and appellant would allow him $690 for it on account of $1,040, the purchase price of the new model Graham which was to be delivered to Myers on notice from him.

Myers, the same day, delivered his old car to appellant with the certificate of title duly assigned to the latter and appellant sold it to one Terwint for a Pontiac car and $200 in cash. Myers knew of the sale, made delivery of the car to appellant in order that the latter might sell it and never expected or intended to get it back when he turned it in. He admitted that he parted with all his title and interest in the car at that time. He said he did not inquire what appellant got for the car because "I didn't think it was any of my business at that time, because I had traded it in and I thought I was through with it."

About the middle of May, Myers told appellant that he wanted his new car by Decoration Day, May 30th; and appellant promised to get it for him by that time. He was unable to do so, and from time to time Myers demanded its delivery, without avail, and finally demanded either the new model or the return of the old car. Appellant was in financial difficulties and was not able to get the new model, and as he had sold the old car was not able to secure its return, and so informed Myers. This prosecution followed.

To support the charge of fraudulent conversion

under the Act of May 18, 1917, it is essential that the automobile at the time of its sale and conversion must have been the property of Myers: Com. v. Hillpot, 84 Pa. Superior Ct. 454. If the result of the transaction between the parties on March 31, 1931 was that Myers parted with his interest and title to the car, intending to transfer them to appellant, then a sale of the car by the latter, even if he retained the proceeds to his own use, would not be a fraudulent conversion within the provisions of the Act of 1917.

It is true that the transfer of certificate of title of a motor vehicle does not determine its ownership, though it may be relevant evidence in establishing the title: Braham & Co. v. Steinard-Hannon Motor Co., 97 Pa. Superior Ct. 19, 25; but the circumstances, as established by the evidence in this case, show that Myers did intend and effect an absolute transfer of the title and ownership of the car to appellant on March 31st, when he made delivery. In selling the car appellant acted for himself, not for Myers and the latter so understood it. A purchaser of an article to be delivered in the future, can pay for it in full or in part at the time it is ordered, and rely on the credit of the seller just as well as a dealer can deliver an article to a purchaser to be paid for in the future, and rely on the latter's credit. The mere fact that either party thus trusted may default in his sale or purchase, as the case may be, does not, of itself, make him subject to criminal prosecution. The Act of May 18, 1917 makes the fraudulent conversion of property a misdemeanor, but it is essential that the property at the time of sale or conversion shall have belonged to another: Com. v. Bixler, 79 Pa. Superior Ct. 295. It was held in that case that the statute did not apply to the failure of a borrower to fulfill his contract to repay money lent to him. No more does it apply to the sale and conversion of property by one to whom it has been transferred

by the owner with the purpose and intent of passing the property and title.

Under the evidence in the case appellant was the owner of the Graham Paige car when he sold it to Terwint. The sale to the latter was made on appellant's own account, not as agent for Myers. Myers could not have recovered the car from Terwint in an action of replevin. What appellant received for the car from Terwint was his own property, not the property of Myers. It is unfortunate for Myers that appellant later was unable financially to carry out his bargain but that does not convert appellant's civil liability into criminal responsibility in the circumstances here present.

The learned court below should have affirmed appellant's request for a directed verdict of not guilty.

The assignments of error are sustained. The judgment is reversed and it is ordered that the appellant be discharged.