Commonwealth *v*. Wiener, Appellant.

Argued December 4, 1940. Before Schaffer, C. J.,
Maxey, Drew, Linn, Stern and Patterson, JJ.

*Henry L. Snyder,* of *Snyder, Wert & Wilcox,* with him *David Freeman,* for appellant.

*Joseph E. Gehringer,* District Attorney, with him *Kenneth H. Koch* and *Ernest F. Ritter,* Assistant District Attorneys, for appellee.

OPINION BY MR. JUSTICE STERN, January 6, 1941:

This appeal, specially allowed, calls for a review of the affirmation by the Superior Court of the conviction of defendant in the Quarter Sessions of Lehigh County. He was indicted on two bills charging fraudulent conversion under the Act of May 18, 1917, P. L. 241, the one of $304 on an automobile lease transaction, the other of $38 on an insurance policy transaction. He was sentenced to pay a fine of $50 on each bill, to make restitution in the sums of $274 and $38 respectively, and to undergo imprisonment on concurrent sentences aggregating three months. While we are handicapped, as the Superior Court must have been, by the lack of a stenographic report of the testimony, and while the record

indicates an unfortunate failure on the part of counsel to note exceptions as to matters subsequently relied upon in defendant's motion for a new trial, we feel that there was such fundamental error in the proceedings that proper regard for the rights of the accused demands the granting of a new trial.

The private prosecutor, Stephen Cenchitz, was in jail at the time of the hearing before the magistrate and had to be temporarily released in order that he might appear there as a witness. As far as the record discloses defendant himself is of good reputation. In August, 1938, Cenchitz owned an automobile which was encumbered by a loan of $309.25, owed to the Standard Loan Company. Defendant undertook to obtain a larger loan on the car, and in order to accomplish this a lease agreement was executed between Turner Street Automobile Company, apparently a corporation with which defendant was in some way connected, and Cenchitz and his wife, whereby they agreed to pay as rental $774 in eighteen monthly installments of $43 each, and a note in that amount was made out by them to the Automobile Company. The agreement expressly specified charges of $38 and $141 as items contained in the sum of $774 to be paid by Cenchitz. The Automobile Company assigned the lease agreement and endorsed the note over to General Acceptance Corporation, which deducted a charge of $141 to cover interest, insurance, etc., and gave a check for $633 to the Automobile Company. Out of this sum the Standard Loan Company encumbrance of $309.25 was paid off and a check for $200 was given by the Automobile Company to Cenchitz. Cenchitz paid the monthly installments due in September, October, November and December, 1938, and apparently made no complaint of having failed to receive the full amount due him from the proceeds of the loan. It was not until September, 1939, approximately a year after the loan was made, that he had defendant arrested on the claim that out of the $774 constituting the loan he was entitled to

all in excess of the $309.25 which paid off the existing encumbrance on the car, and, as he was given only $200, there was due him an additional $274 ($264.75?). Why the indictment charged a conversion of $304 does not appear.

Defendant accounted for the amount due Cenchitz as follows: There was received from General Acceptance Corporation $633, from which was paid the previous encumbrance, leaving a balance of $323.75. Of this, there was reserved $38, being the charge provided for in the lease agreement, and $200 was remitted to Cenchitz. The balance of $85.75 was, as defendant claims, turned over, at the request of Cenchitz, to a bondsman in payment of his charges for entering bail for Cenchitz. Cenchitz, however, claims that he himself paid that amount to the bondsman.

The second bill of indictment grew out of a transaction whereby Cenchitz requested defendant to obtain for him the cash surrender value of an insurance policy which he said had cost him $38 but for which defendant obtained from the insurance company only $6.15. Defendant testified that he applied the latter sum to an account of $15 which Cenchitz owed him for some gasoline and oil. Cenchitz, in rebuttal, admitted owing defendant for the gasoline and oil, but testified that he had paid the account by check, the check proved worthless because of lack of funds to meet it, but later he had taken it up and paid the amount in cash. He produced no receipt or other evidence of having made such payment. It would seem somewhat strange that the insurance policy should have been turned over by Cenchitz to defendant for conversion into money if defendant had no interest in the transaction and was not to apply the proceeds to a debt owed him by Cenchitz.

It is at once apparent that the prosecutor's original claim on the one bill of indictment that there was a conversion of $274 (or $264.75), is utterly unfounded. The eighteen installment payments of $43 aggregated exact-

ly $774, so that, on that basis, Cenchitz would not be paying, either to the Automobile Company or to the Acceptance Corporation, any interest or other charges on the loan. Not only is it incredible that such could have been the arrangement, but the lease agreement signed by Cenchitz and his wife expressly provided for the charges of $141 and $38. The learned trial judge apparently was of the mistaken impression that, after deducting these charges, there was still due Cenchitz $274, and indeed this error on his part is reflected in the fact that in the sentence on this bill of indictment he imposed upon defendant the duty of making restitution in the sum of $274, whereas the only sum really in dispute, as pointed out in the opinion of the Superior Court, was the item of $85.75, and that depended upon whether it was the prosecutor or the defendant who paid the bondsman. The bondsman himself had died and his testimony was not available at the trial.

On the second bill of indictment the learned trial judge imposed a sentence of restitution of $38, but the uncontradicted testimony is that defendant obtained only $6.15 from the insurance company. All that Cenchitz claimed was that the policy had *cost* him $38. Whether the oil and gasoline were paid for in cash by Cenchitz after he had given defendant a bad check for the amount due was the only question of fact on this phase of the case.

Outside of the contradiction in the testimony of the prosecutor and defendant in regard to the $85.75 and $6.15 items, there were two vital issues upon which the case depended and which should have been, but were not, submitted to the jury, or apparently considered by the court. The first of these was whether the loan to Cenchitz was to have been made by defendant himself or procured by him from another lender. If the former, it is evident that a prosecution for fraudulent conversion would not lie, because, even if defendant promised to make a loan to Cenchitz and failed to give him the sum stipulated,

while he would be breaching a civil obligation he would not be guilty of a crime. It is essential, to warrant a conviction under the Fraudulent Conversion Act, that the property alleged to be converted should be *owned* by the prosecutor and not merely *owed* to him by reason of a contractual obligation: *Commonwealth v. Bixler,* 79 Pa. Superior Ct. 295; *Commonwealth v. Overheim,* 106 Pa. Superior Ct. 424, 162 A. 475; *Commonwealth v. Mitchneck,* 130 Pa. Superior Ct. 433, 198 A. 463. It is not clear from the record whether the Turner Street Automobile Company was to make the loan to the prosecutor, itself borrowing the money from the General Acceptance Corporation, or whether the Automobile Company acted merely as an agent or intermediary to procure the loan from the Acceptance Corporation. The documents in evidence indicate that the Automobile Company made the lease agreement with Cenchitz, it assigned that agreement and the note of Cenchitz to the Acceptance Corporation, and the latter, after deducting its charges, gave its check to the Automobile Company, which, in turn, remitted to Cenchitz. The jury should have been instructed that if they found that the loan was to be made, and was in fact made, by the Automobile Company to Cenchitz, even if it failed to turn over to Cenchitz what it had agreed to give him, no conviction on a criminal charge could be had. Indeed, there is not even any evidence in the case to show the relations between defendant and the Automobile Company, and to what extent he was personally involved in these transactions. It is also to be noted that, since the conviction would have been justified at all only if defendant was procuring the loan for Cenchitz from the Acceptance Corporation, he could not have been guilty of converting the sum of $141 which the Acceptance Corporation retained and which defendant never received, and yet that amount is included in the $274 for which the court ordered defendant to make restitution on this bill of indictment.

A second and equally important question necessarily involved in the case was whether there was a *fraudulent* conversion. The learned trial judge instructed the jury as follows: "Well, now, it comes down to this plain proposition, members of the jury: whom are you going to believe? That's the whole proposition." Outside of the fact that at the beginning of the charge the court read the Act of Assembly to the jury, there was no mention made by him of the vital principle that there could be no conviction unless defendant had a fraudulent or criminal intent. Certainly a conviction cannot be sustained on a charge which leaves the jury under the impression that the mere withholding of the property of another, even though not a fraudulent withholding, would render the defendant guilty: *Commonwealth v. Irvine,* 125 Pa. Superior Ct. 606, 190 A. 171; *Commonwealth v. Koss,* 136 Pa. Superior Ct. 173, 7 A. 2d 20. Were it otherwise, wherever there was a dispute on an account, however bona fide, the person ultimately found to be mistaken could be criminally indicted. Even if it were finally determined that defendant did owe the items of $85.75 and $6.15 to the prosecutor, he may have honestly believed he was justified in making the alleged payment of the one item to the bondsman and in crediting the other against the debt which he thought the prosecutor owed him. The question was not whether defendant had the right to withhold this money but whether in good faith he believed he had such right. He would be guilty of conversion under the statute only if at the time he retained the money he knew he was not entitled to it. The charge of the court would have been proper in a civil suit, but on the basis of it the jury may have convicted defendant merely because, as the learned trial judge advised them, the whole proposition depended on whom they were "going to believe" as to the state of the account between the parties. It is true, as pointed out by the Superior Court, that "if there are circumstances from which a fraudulent conversion may be

inferred, intent is implied," but the jury should have been instructed that unless they inferred from the circumstances that a fraudulent intent did exist, there could not be a conviction.

There were other features of the trial which in themselves made the result of doubtful propriety. When it appeared that the bondsman was paid, either by the prosecutor or defendant, the sum of $85.75, the trial judge stated, in the presence of the jury, that he would not countenance the practice of professional bondsmen in the county, and he then and there instructed the district attorney to investigate this bail transaction. It is stated in appellant's brief that this remark created great public discussion in the City of Allentown, where the case was tried, and that news items concerning it appeared in all the papers for the next few days. The jury might well have been prejudiced into believing that, the transaction of a professional bondsman being reprehensible, defendant was somehow implicated because he had made a payment to the bondsman of the latter's charge for going on the prosecutor's bond.

The learned trial judge charged the jury on the subject of reasonable doubt as follows: "Well, if there is any reasonable, well-grounded doubt as to the defendant's guilt—*you have heard me charge about that*—then you must resolve that doubt in favor of the defendant, and your verdict would be that of 'not guilty' . . ." Since the court thus incorporated into its charge something which it had laid down as law in other cases, and defendant had no means of knowing what such statements were, or in what cases they were made, or whether they were stenographically reported, and therefore was unable to ascertain whether or not they were correct statements of the law, this, by well considered authorities, ordinarily constitutes reversible error: *Commonwealth v. Cohen,* 133 Pa. Superior Ct. 437, 2 A. 2d 560; *Commonwealth v. Cunningham,* 137 Pa. Superior Ct. 488,

9 A. 2d 161; *Commonwealth v. Katz,* 138 Pa. Superior Ct. 50, 58, 59, 61, 10 A. 2d 49, 52, 53, 54.

There were several inaccuracies in the charge of the court in detailing the facts, evidently inadvertent and doubtless due to the number of petty figures involved, but they are of minor moment.

The judgments of the Quarter Sessions Court of Lehigh County, affirmed by the Superior Court, are reversed, the sentences thereon are vacated, and a new trial is granted.