## Pearl Assurance Company, Ltd. *v.* National Insurance Agency, Inc. et al., Appellants.

Argued October 15, 1941; reargued December 8, 1942.

Before KELLER, P. J., BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Albert M.. Hankin,* for appellants.

*C. Laurence Cushmore, Jr.,* with him *E. H. West* and *White & Staples,* for appellee.

OPINION BY KELLER, P. J., January 28, 1943:

This action of trespass was before us in 150 Pa. Superior Ct. 265, 28 A. 2d 334. We ordered a re-argument because the theory on which we were inclined to decide the case had not been raised or argued, and we thought it only fair to the litigants, as well as to this court, that we should have the benefit of the argument of counsel before making our decision. That argument has now been had, and we are confirmed in our opinion that the judgments should be affirmed.

We shall not repeat the facts recited in our prior opinion. Reference may be had to it. The gist of the action was the unlawful withholding, appropriation, or conversion to their own use, by the defendants—the individual defendant being the sole stockholder and owner of the corporation defendant, who personally did all the acts complained of—of premiums actually received by them on certain fire insurance policies which had been intrusted to them by the plaintiff for the purpose of delivery, and to collect the premiums, and pay over the same, less commissions, to the plaintiff.

The defense in the court below was (1) that the corporate defendant was licensed only as an insurance *broker,*[1] not an insurance *agent,* and that while admittedly liable in *assumpsit* for *all* the net premiums, whether actually received or not, it was not liable in

---

[1] Insurance Department Act of 1921, P. L. 789, and its amendments, secs. 601, 621, etc., 40 PS §§231 and 251.

*trespass* for the premiums paid to it and converted by it to its own use; and (2) as to the individual defendant that he could not be held personally liable for the acts of the corporate defendant.

We pointed out that the Insurance Department Act of 1921, in classifying, for certain purposes, representatives of insurance companies into "agents" and "brokers" did not prevent an *insurance broker* from acting as a representative or agent for an insurance company in the collection of the premiums on a policy intrusted to him for delivery and its payment over to the company less his agreed commission. See *Gosch v. Firemen's Ins. Co.*, 33 Pa. Superior Ct. 496. We said, "One does not have to be licensed as either an insurance broker or insurance agent to do this. Any person, or any corporation whose business bears any relation to insurance, or to the delivery of papers, deeds, contracts, etc. may be authorized by an insurance company to deliver a policy and collect the premium; and when so collected, the duty attaches to pay over the amount so received, less the costs, expenses, etc. incident thereto, to the insurance company. As pointed out in *Transcontinental Oil Co. v. Atlas Assurance Co. Ltd.*, 278 Pa. 558, 123 A. 497, the purpose of Article VI (P. L. 810) of said Act of 1921 was to compel registration of the classes of individuals named, and to prohibit the doing of certain acts declared unlawful. 'There is nothing in the statute relied upon which may be said to change the well-established rule that the insured, in making payment, may safely rest on the implied authority to receive the premium, which the company confers on the person to whom the policy has been given for delivery'. (P. 565)."

There is nothing inherently inconsistent between the position of an insurance broker in the placing of policies and his acting for the insurance company in collecting the premiums and remitting the proceeds after deducting his commissions.

We were met, however, with the ruling of the Supreme Court in *Life Assn. v. Catlin,* 2 Walker 338 (1879), which held that *trover* would not lie to recover the amount of premiums on life insurance policies received by defendant as agent for plaintiff, for which he was to receive a percentage; that the action of trover was restricted to cases where it was the duty of the defendant to turn over to the plaintiff the identical or specific goods received by him; or as respects money, the identical coin or bank notes received.

The question now before us is whether this ruling has been affected by the Acts of May 25, 1887, P. L. 271 and May 18, 1917, P. L. 241.[2] We hold that it has.

One effect of the Act of 1887, P. L. 271, abolishing the distinction between actions *ex contractu* and actions *ex delicto,* so far as relates to procedure, and providing for two forms of action, assumpsit and trespass, was to abolish all *procedural* distinctions between actions *ex delicto,* and make all damages growing out of such actions recoverable in one form of action, to be called an 'action of trespass'. This did not have the effect of confining the new action of trespass, so prescribed, to exactly the same wrongs, delicts or torts as were covered at that time by the actions of trespass, trover and trespass on the case. Any civil wrong, delict or tort thereafter arising, whether or not it could have been included within the former actions of trespass, trover or trespass on the case, is, since the effective date of the Act of 1887, supra, made remediable in an action of 'trespass.' To rule otherwise would deny a remedy to the injured party unless an *appropriate* form of action existed centuries ago,[3] notwithstanding modern condi-

---

[2] Repealed, but substantially re-enacted by the Penal Code of 1939, P. L. 872, sec. 834, except that the Code makes the offense a felony.

[3] "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down

tions have brought with them new and additional wrongs, delicts or torts, recognized by the legislature to be such. Our action of assumpsit was originally a form of trespass on the case for breach of a parol undertaking. See discussion in *Battles v. Nesbit,* 149 Pa. Superior Ct. 113, 116-119, 27 A. 2d 694. It has since become our only form of action *ex contractu.* There is no reason for keeping the present action of 'trespass' in a strait jacket fashioned in the Fifteenth Century.[4]

By the Act of May 18, 1917, P. L. 241, it was provided "that any person having received or having possession, in any capacity or by any means or manner whatever, of any money or property ...... of or belonging to any other person, firm or corporation, or which any other person, firm or corporation is entitled to receive and have, who fraudulently withholds, converts or applies the same, or any part thereof, or the proceeds or any part of the proceeds, derived from the sale or other disposition thereof, to and for his own use and benefit, or to and for the use and benefit of any other person, shall be guilty of a misdemeanor", etc. Commonly known as *fraudulent conversion,* it is not confined to cases of *conversion* following a supposititious finding, or *trover,* and hence is not limited to cases where the duty rested on the defendant to deliver to the owner the identical property, coin, bank-notes, etc., which he received. It applies as well to cases where property, securities, etc. were placed with the defendant with authority to deliver or dispose of them and collect or receive the proceeds for the owner, and he fraudulently withholds, converts or misapplies the

---

have vanished long since and the law simply persists from blind imitation of the past." Collected Legal Papers of Oliver Wendell Holmes, p. 187. Address on The Path of the Law, before the Boston University School of Law, January 8, 1897.

[4] See Prof. James Barr Ames' Essay on History of Trover—Select Essays in Anglo-American Legal History, Vol. 3, 417, p. 442.

property or the proceeds derived from the sale or other disposition thereof.

It was designed to cover those border line cases between embezzlement and larceny by bailee, where the faithless agent or custodian sometimes escaped his just deserts on the ground that his actions were only a breach of trust for which he was not responsible by criminal prosecution, or even by civil action except in assumpsit.

Thereafter, it was a public wrong, a misdemeanor, fraudulently to withhold, convert to one's use or the use of another, or misapply money or property, or the proceeds of property, *belonging to another,* which had been lawfully received by, or which had come lawfully into the possession of, the defendant; and being such, it was also a civil wrong, delict, or tort against the party specially or particularly injured thereby, whose property had thus been wrongfully withheld, converted or misapplied, for which damages could be recovered in an action of "trespass."

Counsel for appellee in their supplemental brief point out that the Statute of 13 Edward I, stat. 1, chap. 24, which provided that where it shall happen that in one case a writ is found, and *in like case* falling under like law and requiring like remedy, none is found, the clerks of the chancery shall agree in making the writ—from which authority the action of trespass on the case, shortened to the action of case, arose—is in force in Pennsylvania, (Report of the Judges, 3 Binney 604, Robert's Digest, pp. *157, *158). The Act of June 16, 1836, P. L. 784, sec. 3, 17 PS §44, which gave the Supreme Court authority to devise and establish new writs and forms of proceedings (See *Vinnacombe v. Phila. et al.,* 297 Pa. 564, 147 A. 826; *Delco Ice Mfg. Co. v. Frick Co.,* 318 Pa. 337, 178 A. 135), did not strip the General Assembly of its authority to legislate on the forms of actions and to enlarge the scope of common law actions.

Had the English Chancery authorities seen fit to issue a *special* writ of action on the *case* to remedy an unlawful conversion of money or property *lawfully received,* instead of applying to it a writ issued for the *finding* and unlawful retention of lost property—trover—this case would not be here. But that action certainly does not prevent this Commonwealth from enlarging or changing the remedy thus applied.

Since 1887, the action of 'trespass' includes all actions *ex delicto,* however arising, whether old or new.

Bouvier (Rawle's 3d Revision, Vol. 1, p. 1103) in defining *ex delicto,* says: "Actions which arise in consequence of a crime, misdemeanor, or tort are said to arise *ex delicto*".

Sir Frederick Pollock (Pollock on Torts, 14th ed. pp. 16-18) points out that in the original conception of law only particular specified forms of obligation were enforceable and only that harm which fell within one of certain specified categories of wrongdoing entitled the person aggrieved to a legal remedy. He continues: "Such is not the modern way of regarding legal duties or remedies ...... So we can be no longer satisfied in the region of tort with a mere enumeration of actionable injuries ...... The three main heads of duty with which the law of torts is concerned—namely, to abstain from wilful injury, to respect the property of others, and to use due diligence to avoid causing harm to others—are all alike of a comprehensive nature. As our law of contract has been generalized by the doctrine of consideration and the action of *assumpsit,* so has our law of civil wrongs by the wide and various applications of actions on the case. It is submitted, moreover that any attempt, at this day, to maintain a narrower conception of civil duty can lead only to interminable difficulties." The writer then proceeds to quote the language of Lord Camden (then Chief Justice PRATT) in *Chapman v. Pickersgill,* 2 Wils. C.B. 145, 95 Eng. Rep. 734, to the effect that "torts are infinitely

various, not limited or confined", and the statements of Lord Justice Bowen in *Skinner & Co. v. Shew & Co.* (1893), 1 Ch. 413, 422, that: "At Common Law there was a cause of action whenever one person did damage to another wilfully and intentionally, and without just cause or excuse," and to the same effect in *Mogul Steamship Co. v. McGregor* (1889), 23 Q.B. Div. 598, 613. The discussion is concluded with a quotation from the opinion of Mr. Justice HOLMES in *Aikens v. Wisconsin*, 195 U. S. 194, 204: "It has been considered that, *prima facie,* the intentional infliction of temporal damage is a cause of action, which, as a matter of substantive law, whatever may be the form of pleading, requires a justification if the defendant is to escape ...... It is no sufficient answer to this line of thought that motives are not actionable and that the standards of the law are external. That is true in determining what a man is bound to foresee, but not necessarily in determining the extent to which he can justify harm which he has foreseen."

See also Restatement—Agency,

"§399. Remedies of Principal.

"A principal whose agent has violated ...... his duties has an appropriate remedy for such violation. Such remedy may be ......

(b) an action of tort ......

"§402(1). An agent is subject to liability to the principal for ...... money which the agent holds for the principal, and to the immediate possession of which the principal is entitled, together with interest thereon if the amount is liquidated, or damages, if the agent ......

(b)   used it for his own purposes under an adverse claim;

(c)   unreasonably refuses to surrender it on demand."

In construing the Act of 1917, supra, we pointed out

that it was essential that the money or property so fraudulently withheld or converted by the defendant must have *belonged* to the party so injured. It did not apply to one who *borrowed* money, even though he may have had no intention of paying the loan, for by the act of lending, the money became the property of the borrower—"the defendant did not receive any money or goods which belonged to any person other than himself": *Com. v. Bixler,* 79 Pa. Superior Ct. 295; nor to articles or property transferred to the defendant with the purpose and intent of passing to him the property and title: *Com. v. Overheim,* 106 Pa. Superior Ct. 424, 427, 162 A. 475; nor is it to be applied as a means of collecting a mere debt: *Com. v. Hillpot,* 84 Pa. Superior Ct. 454, 458; nor to the assignment of a debt: *Com. v. Mitchneck,* 130 Pa. Superior Ct. 433, 198 A. 463. It does apply, however, where money, securities, or property belonging to A. are intrusted to the defendant to deliver to B., or to sell or dispose of the same, and to collect and pay the money received or the net proceeds arising from such sale or disposal to A., and instead he fraudulently applies the same to his own use; of which the following cases are examples: *Com. v. Spear,* 73 Pa. Superior Ct. 205; *Com. v. McDonald,* 74 Pa. Superior Ct. 357, 360; *Com. v. Ryder,* 80 Pa. Superior Ct. 452; *Com. v. Vis,* 81 Pa. Superior Ct. 384; *Com. v. Gilliam,* 82 Pa. Superior Ct. 75; *Com. v. Wooden,* 94 Pa. Superior Ct. 452; *Com. v. Barnes,* 107 Pa. Superior Ct. 46, 162 A. 670; *Com. v. Drass,* 111 Pa. Superior Ct. 375, 170 A. 706; *Com. v. Willstein,* 146 Pa. Superior Ct. 357, 22 A. 2d 613.

In the present case, the policies of insurance were not sold to the defendants or either of them; they were not lent to them; there was no intention to pass title to them to the defendants or either of them. The policies never became their property. They were contracts intended to insure the named individual policy holders against loss or damage by fire, which when delivered

would become the property of the insured. They were intrusted to the defendants only for delivery and the collection of the insurance premiums. Because of the custom of *extending credit to the insured* the insurance company did not insist on immediate cash payment for the policies, but the transaction never became one of simple debtor and creditor between the insurance company and the defendants. The obligation resting on the defendants was to collect the premiums and when collected to pay over the amount so collected less an agreed percentage to compensate defendants for their services. The money so collected by defendants, over and above the percentage deductible as compensation for services, never became the money of the defendants, but at all times was the property of the plaintiff insurance company. The transaction totally negatives any idea of a *sale on credit* of the policies to the defendants or either of them. They never had any *property* in them.

We pointed out in our prior opinion that the private wrong suffered by the injured party whose money or property was fraudulently misapplied or converted is not swallowed up or merged in the public wrong done the Commonwealth. The common law doctrine supporting such merger never did apply to *misdemeanors*, such as fraudulent conversion was when the wrongful misapplication took place in this case; and even as respects felonies it has been the settled law of this Commonwealth, at least since the Criminal Procedure Act of 1860, P. L. 427, that any person injured or aggrieved by such felony may maintain his civil action against the person or persons guilty of such felony, in like manner as if the offense committed had not been feloniously done; "and in no case whatever, shall the action of the party injured be deemed, taken or adjudged to be merged in the felony, or in any manner affected thereby". (sec. 71, p. 447). Similar provisions are

found in the Penal Code of 1939, P. L. 872.[5]

We are not required to maintain that a civil action for a private wrong lies in every case where a public wrong—a crime or misdemeanor—is committed; but it is elementary that a person may offend against the Commonwealth and also be liable for civil damages or other relief growing out of the same offense; and wherever any person is specially injured in his person or property by the criminal act of another—except possibly in capital cases—an action for damages may be maintained against the wrongdoer by the person injured, for any special injury to himself in his individual capacity and not merely as a member of the community. And since the Act of 1887, supra, that action for damages will be an action of *'trespass'*.

Counsel for appellants in his supplemental brief, relies on the case of *Globe & Rutgers Fire Ins. Co. v. Fisher*, 234 Mich. 258, 207 N. W. 884, which, in effect, held that the incidents of the old common law action of trover, which had been abolished in Michigan by statute (Comp. Laws 1915, §12350), with the provision that where it was formerly maintainable, either an action on the case for conversion or an action in assumpsit would lie, prevented a recovery in circumstances like the present case, because at common law there could be no recovery in trover where there was no obligation on the defendant to pay over the specific money entrusted to his care; and the plaintiff could not maintain *case* at *common law* for a *conversion;* and this,

---

[5] "Section 1102. Civil Rights and Remedies Preserved. The provisions of this act shall not affect any civil rights or remedies now existing by virtue of the common or statute law.

"Section 1103. Civil Penalties Not Affected. The omission to specify or affirm in this act any liability to damages, penalty, forfeiture or other remedy imposed by law and allowed to be recovered or enforced in any civil action or proceeding for any act or omission declared punishable herein shall not affect any right to recover or enforce the same."

notwithstanding the fact that the Legislature of Michigan in 1917 (Public Acts 1917, pt. 2, c.4, §10, 17 Mich. Statutes Ann. sec. 24.174) had passed an Insurance Act expressly providing that any money received by an agent or broker as a premium should be deemed to have been received by him in a fiduciary capacity, and that if he embezzled, fraudulently converted or appropriated it to his own use, he should be guilty of larceny by embezzlement. The Supreme Court of Michigan ruled that notwithstanding the statutory changes in the law, a *conversion* of money or property was still limited by the incidents which attached at common law to a *conversion* of *found property*, as fixed and determined by an action of trover—that is, in effect, that the term 'conversion' as first used in A.D. 1479 [6], could not be changed or enlarged by legislative enactment four hundred and thirty-eight years later. We are unwilling to follow any such doctrine.

With respect to the question of the defendant Rovno's personal liability to the appellee company, it should be noted that he was not only the owner of all the stock of the corporate defendant, as well as its president and authorized agent, but he also personally did all the acts involved in the transactions complained of in this action. "The fiction of a corporation as an entity distinct from the aggregate of individuals comprising it was designed to serve convenience and justice. There is consequently an exception recognized wherever the rule is known, namely, that the fiction will be disregarded and the individuals and corporation considered as identical whenever justice or public policy demand it and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless"; *Tucker v. Binenstock,* 310 Pa. 254, 263, 165 A. 247; *Markovitz et al. v. Markovitz et al.,* 336 Pa.

---

[6] See Prof. Ames' Essay on History of Trover, (supra, note 4), p. 442.

122, 126, 8 A. 2d 36; *Great Oak B. & L. Assn. et al. v. Rosenheim,* 341 Pa. 132, 19 A. 2d 95; *Miller v. South Hills L. & S. Co.,* 334 Pa. 293, 297, 6 A. 2d 92; *Cohen v. Maus,* 297 Pa. 454, 457, 147 A. 103; *Semple v. Morganstern,* 116 A. 906 (Conn.).

For the foregoing reasons as well as those set forth in the opinion filed to 150 Pa. Superior Ct. 265, above referred to, the assignments of error are overruled and the judgments are affirmed.

The decision in *Cherry v. Paller,* 91 Pa. Superior Ct. 417, referred to in our prior opinion, is overruled.