**ODELL et al. v. HUMBLE OIL & RE-
FINING CO.**

No. 4512.

United States Court of Appeals
Tenth Circuit.

Jan. 2, 1953.

C. M. Neal, Hobbs, N. M. (W. D. Girand, Jr., Hobbs, N. M., on the brief), for appellants.

Nelson Jones, Houston, Tex. (Hiram M. Dow, Roswell, N. M., and K. C. Minter and Rex G. Baker, Houston, Tex., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of New Mexico, dismissing appellants' cause of action for failure to state a claim upon which relief could be granted. For the purpose of considering the correctness of the court's ruling, all facts well pleaded must be taken as true.

Plaintiff's cause of action was predicated on 18 U.S.C.A. § 1503.[1] The complaint in substance alleged that plaintiffs were employees of the Humble Oil and Refining Company, a corporation; that the amount involved as to each plaintiff exclusive of interest and costs was more than $3,000; that at all material times there was in effect a contract between the Employees' Federation of the Humble Oil and Refining Company, Production Department, West Texas Division, and the defendant, Humble Oil and Refining Company, governing the terms, conditions and relations of plaintiffs' employment by the company; that plaintiffs were members of the Federation; that by virtue of said contract and of the employment of the plaintiffs by the defendant the plaintiffs became and were vested with property rights, consisting of their jobs, and all the valuable incidents thereto including seniority, membership in the Humble Federation, retirement benefits including plaintiffs' right to remain in the employment of the defendant until discharged for the reasons or under the conditions provided by the contract.

The complaint further alleged that the Humble Oil and Refining Company was indicted in the United States District Court for the District of New Mexico charged with a federal offense; that prior to the return of the indictment and while the grand jury of the United States District Court

1. Section 1503 provides that "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

was investigating the case that resulted in the indictment, plaintiffs were subpoenaed to appear as witnesses before the grand jury and did appear and give their testimony; that after the return of the indictment and upon trial of the defendant company they were again subpoenaed to appear as witnesses and did so appear and gave their testimony; that after the defendant was found guilty, sentence imposed and the judgment affirmed on appeal to the Circuit Court, they were wrongfully discharged from their employment; that they were discharged by defendant by reason of the fact that they had appeared pursuant to the subpoena and testified as required by law; that the discharge of the plaintiffs was not by reason of any of the causes for which plaintiffs could be discharged by the defendant under the terms and conditions of the contract that governed their relations but solely by reason of their having appeared pursuant to subpoena and having testified; that such discharge destroyed their property rights in their jobs and deprived them of all valuable incidents to their employment including their means of livelihood, their seniority, their right to participate in thrift, annuity and retirement benefits, and their right to continue in the employment of the defendant until such employment was terminated under the terms and conditions of said contract. Each plaintiff separately sought judgment for actual damages of $100,000 and punitive damages of $100,000.

The trial court did not set out the grounds on which it based its judgment. In support of the judgment appellee urges that the purpose of Congress in passing Section 1503 was to protect the administration of justice; that it is a criminal statute and must be strictly construed and does not purport to affect any civil rights or liabilities.

Appellants concede that the main purpose of the statute is the protection of the administration of justice but they make the further contention that it was also passed in part for the personal benefit of the witnesses themselves and for the protection of their person and property and that this was a purpose separate and distinct from the paramount purpose of safeguarding the administration of justice. They argue that that part of the statute making it a criminal offense to injure "any person or witness in his person or property" on account of his having attended court as a witness was passed for the witnesses' protection. From this they argue that since the statute was in part passed for their benefit it confers a cause of action on them for the violation of their safeguarded rights thereunder, although it makes no specific mention of their right to maintain such an action.

Appellants place strong reliance on the case of Texas & Pacific R. v. Rigsby, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874, where the Supreme Court said: "A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law expressed in 1 Comyn's Dig. title, 'Action upon Statute' (F), in these words: 'So, in every case, where a statute enacts or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law.'" This quotation by the Supreme Court was taken from the early English case of Couch v. Steel, 3 H. & B. 402. The language in these two cases is without qualification and in its broadest scope is sufficient to give a cause of action to one injured in his person or property by the violation of a penal statute passed for public purposes, even though no such right is conferred in the statute. But the language in each of these cases must be construed in light of the facts therein. This is pointed out with respect to the Couch case in an article, Public Wrong and Private Action, 27 Harvard Law Review, 317. Professor Thayer implies therein that the literal language of Lord Campbell is broad enough to give a civil remedy for violation of any criminal statute. The penal statute in the

Couch case required medicines to be kept on board ship but that duty already existed at common law and the only question in the case was whether the penalty provided in the statute was intended to be the exclusive remedy for its breach. All the court in fact held was that the prior existing civil remedy to one who was injured by the tortious act of the master of a vessel in failing to have on hand medicines for passengers' and seamen's benefit was not wiped out by the penal statute. This was the construction placed upon the Couch case by Lord Cairns in the later case of Atkinson v. The Newcastle & Gateshead Water Works Company, 2 Ex.Div. 441, where it was held that a penal statute requiring a water works company to furnish required services to water users did not give a private cause of action for a violation of the statute by failing to provide the required service.

In Pearl Assurance Co. v. National Insurance Agency, 150 Pa.Super. 265, 28 A. 2d 334, Id., 151 Pa.Super. 146, 30 A.2d 333, it was held that a fraudulent conversion statute, a violation of which amounted to a criminal offense, did not wipe out the private wrong by merging it with the public wrong and that one especially injured could recover in tort.

Taylor v. Lake Shore & M. S. R. Co., 45 Mich. 74, 7 N.W. 728, involved a regulatory ordinance requiring snow and ice to be kept off side walks fronting residences. The court held that the duty to maintain the side walks free from snow and ice was a public duty and not a duty owed to individual pedestrians and did not confer upon them a private cause of action in case of injury resulting from a violation of the ordinance.

In Howson v. Foster Beef Co., 87 N.H. 200, 177 A. 656, 659, it was held that a customer who suffered injury from contaminated meat purchased from a dealer could not maintain an action against him under the State Pure Food Laws regulating such sales and making a violation thereof a penal offense. The court failed to find legislative intent to impose civil liability in favor of one injured by the sale of contaminated meat in violation of the provisions of the law. The court said: "It is the rule here that the violation of a penal statute is an actionable wrong only when the Legislature expressly so provides * * *, or when the purpose and language of the statute compel such inference."

In Munson Line v. Green, 6 F.R.D. 14, 18, the District Court of New York held that one who violated a statute making it an offense to conspire to falsely maintain or institute actions or special proceedings did not give a cause of action to one against whom harassing law suits had been filed in violation of the statute. In its opinion the court said: "As I read the cases relied upon by plaintiff to sustain this cause of action, I note that they have to do with conspiracies based upon acts which were illegal in themselves in the light of the common law and public policy of the State. I find no case expressly authorizing a civil suit under this statute for falsely instituting an action. Nor can I impute to the Legislature an intent to change well-established rules of law in the absence of a clear manifestation of such intention."

There is a group of cases all dealing with regulatory measures for the express benefit of a class in which it has been held that the penal provision of the statute was not the exclusive remedy for its violation but that any person injured by its violation could maintain a cause of action for damages suffered. Texas & Pacific Ry. v. Rigsby, supra, centered around the National Safety Appliance Act, 45 U.S.C.A. § 1 et seq.; Kardon v. National Gypsum Co., D.C., 69 F.Supp. 512, involved a violation of the Securities Exchange Act, 15 U.S.C.A. § 77b et seq.; McComb v. Frank Scerbo and Sons, D.C., 80 F.Supp. 457, involved the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. All of these Acts were passed for the special benefit of the group covered thereby.

While Section 1503 has been on the statute books since 1831, there are not many cases that have dealt extensively with its scope or purpose. In a number of cases

it has been stated in general terms that the purpose of the statute was to protect the administration of justice.[2] The pertinent part of the statute under consideration was passed by the Act of June 8, 1945, 59 Stat. 234. According to the Report of the Senate Judiciary Committee and the letter of the Attorney General of February 17, 1945, the need for the amendment was that as the law then stood it was not a criminal offense to injure a witness or juror on account of having participated in judicial proceedings in federal courts. It was to strengthen the administration of justice in this respect that the amendment was passed.

Since the Amendment of June 8, 1945, a number of Circuit Courts have given this part of the statute casual consideration. Thus it has been stated that the statute was designed to protect witnesses in federal court and also to prevent a miscarriage of justice by corrupt methods.[3] But all of those cases were criminal proceedings by the Government for the violation of the statute and none of them involved or considered the question of civil liability of an offender to a witness who had been injured by him in his person or his property by his unlawful acts. They are, therefore, not authority or decisive of the question now before us. As far as this phase of the statute is concerned, it seems to be a question of first impression.

■ Courts possess the power and it is their duty to interpret and determine legislative intent but in doing this we must not over-indulge or unduly speculate with respect to meanings not clearly reflected in the language of the statute. Courts are quick to find that the penal provisions of a criminal law making a crime of an act, which if committed at common law would give a cause of action, was not intended to be the exclusive remedy for a violation and that in the absence of clear language it was not the intent of Congress by the passage of such act to wipe out a civil cause of action one would have had for tort at common

law for the commission of the prohibited act. But there should be clear and compelling reasons for holding in the absence of expressions in the law itself that one has a cause of action because of a violation of a criminal law passed for the protection of the public, when he would not have had such cause of action at common law for the same act.

■ We accordingly conclude from a consideration of the authorities that where a penal act is passed for the benefit of a class a violation of the criminal statute resulting in injury to one of such class gives him a cause of action which he may assert in any court of competent jurisdiction, notwithstanding that no reference is made to such a right in the act, and also that where a cause of action exists at common law for the commission of a tort the passage of a penal statute in the interest of the public and providing for sanctions for its violation does not in the absence of clear language to the contrary wipe out such pre-existing common law action; but that where a penal statute is passed in the interest of the public, the commission of a violation of which did not give one injured thereby a cause of action at common law, no such cause of action arises in the absence of clear language evidencing a Congressional intent to give one injured thereby a cause of action in addition to the sanctions provided for its violation.

■ Reduced to its simplest terms, appellants complain that to punish them for their appearance in federal court appellee violated their property rights by discharging them in violation of the terms of the contract of employment and in violation of the terms of the bargaining agreement between their bargaining agent and appellee. But since Section 1503 was passed in the interest of the public, appellee's violation of appellants' rights under the contract would not constitute a tort against them unless the violation thereof amounted to a tort at common law.

**2.** Sneed v. United States, 5 Cir., 298 F. 911; United States v. Perlstein, 3 Cir., 126 F.2d 789; Smith v. United States, 8 Cir., 274 F. 351.

**3.** Samples v. United States, 5 Cir., 121 F. 2d 263; Broadbent v. United States, 10 Cir., 149 F.2d 580; Catrino v. United States, 9 Cir., 176 F.2d 884.

 It is the universally recognized rule that in the absence of a contract or statutory provisions an employer may discharge an employee without cause or reason or for any cause or reason.[4] So also it has been held by the overwhelming weight of authority that the discharge of an employee in violation of his contract irrespective of the motive therefor constitutes only a breach of contract and not a tort and that the recoverable damages are limited to those flowing from the contractual breach and that no punitive damages are recoverable no matter what the motive that prompted the discharge.[5] The only exception to the rule is where the wrongful discharge is tinctured with fraud.[6] But for obvious reasons motive for discharge alone does not partake of any of the elements necessary to constitute fraud.

The contract with the employees' bargaining representative provided that it could be terminated by either party by giving thirty days notice in writing. Where a contract of employment expressly empowers an employer to terminate the contract upon giving notice, recovery for wrongful breach is limited to the notice period.[7] The complaint alleged that each appellant was receiving a salary which together with other valuable incidents to his job was of the value of $500 per month. Under the provisions of the contract, one month's salary was the maximum amount recoverable for breach of the contract.

Whenever it clearly appears from the complaint as a whole that the maximum possible recovery is less than the minimum jurisdictional amount necessary to confer federal jurisdiction of the subject matter, a bare allegation that there is in controversy more than $3,000 exclusive of interest and costs is insufficient to state a cause of action of which a federal court has jurisdiction.[8]

The motion for summary judgment dismissing the alleged cause of action was, therefore, properly sustained and the judgment appealed from is affirmed.

---

4. Jefferson Electric Co. v. National Labor Relations Bd., 7 Cir., 102 F.2d 949; Harper v. Southern Coal & Coke Co., 5 Cir., 73 F.2d 792; Boatright v. Steinite Radio Corp., 10 Cir., 46 F.2d 385; Mitchell v. Stanolind Pipe Line Co., 10 Cir., 184 F.2d 837.

5. Holland v. Spartanburg Herald-Journal Co., 166 S.C. 454, 165 S.E. 203. See also Report and Annotations of this case in 84 A.L.R. 1336.

6. See Holland v. Spartanburg Herald-Journal Co., supra; McCormick on Damages, Section 163, Page 638.

7. F. W. Woolworth Co. v. Petersen, 10 Cir., 78 F.2d 47; System Federation No. 59, etc. v. Louisiana & A. R. Co., D.C., 30 F.Supp. 909; Olsen v. Arabian American Oil Co., 2 Cir., 194 F.2d 477.

8. Wyoming Ry. Co. v. Herrington, 10 Cir., 163 F.2d 1004; Elliott v. Empire Natural Gas Co., 10 Cir., 4 F.2d 493; First National Bank v. Louisiana Highway Commission, 264 U.S. 308, 44 S.Ct. 340, 68 L.Ed. 701; St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845.