Dissenting Opinion by
Packel, J.:
The record of this case is replete with evidence of serious misconduct by the defendant-appellant. Time and again he made promises which he did not fulfill. Excuses for nonperformance poured from his lips in a steady stream. Misstatements seemed to be the order of the day. There is no doubt as to the suffering of many of the customers of the defendant as a result of the manner in which he conducted his business.
*63 In 1963 defendant entered the memorial monument business and had consummated some 4,000 sales prior to his conviction on eight of twenty-five bills charging fraudulent conversion, Act of June 24, 1939, P. L. 872, §834,18 P.S. §4834. The court below has filed an opinion in support of its findings in which it described in detail the eight cases and then stated:
“Appellant does not weigh favorably on the scales of credibility.
“From the circumstances of each case — withholding of money, inaccessibility of appellant, non-performance and various excuses therefor, false claims of performance and ultimate performance after arrest and conviction — a fraudulent intent may be inferred.”
Defendant contended that the Commonwealth failed to sustain its burden of proving an essential element of the crime of fraudulent conversion — lack of title or any other legal or equitable interest in the property allegedly converted.
I reluctantly conclude that the evidence does not support a charge of fraudulent conversion. This case makes manifestly clear the need for adequate protection for consumers by utilization of equitable or other statutory remedies.[1] It may well be appropriate for the legislature to enact even stronger measures to control business operations that are fraught with unsavory practices and unconscionable treatment of consumers.
Areas of the law which have received modern statutory treatment such as sales and taxation are not as dominated as they once might have been by analysis of title. However, this conceptual heritage may not be shunned in evaluating whether particular facts arise to a fraudulent conversion. First, there is the proposi *64 tion, self-evident in the common law, that one is incapable of converting property which he owns. Secondly, the statute plainly incorporates this conceptual background in describing the subject matter of the crime as “money or property, of any kind whatsoever, of or belonging to any other person, or which any other person is entitled to receive and have.”
Thus, our Court has always been of the unanimous view that if title as well as possession pass to the accused, the crime of fraudulent conversion cannot be made out. Commonwealth v. Yocum, 211 Pa. Superior Ct. 17, 234 A. 2d 43 (1967); Commonwealth v. Schuster, 158 Pa. Superior Ct. 164, 44 A. 2d 303 (1945) (allocatur refused); Pearl Assur. Co. v. Nat'l. Ins. Agency, 151 Pa. Superior Ct. 146, 30 A. 2d 333 (1943) (allocatur refused); Commonwealth v. Overheim, 106 Pa. Superior Ct. 424, 162 A. 475 (1932); Commonwealth v. Bixler, 79 Pa. Superior Ct. 295 (1922).
It is hornbook law that if A pays money to B, in order to obtain the latter’s promise of performance and B defaults, civil remedies may be available but there has been no fraudulent conversion because all rights of ownership of the money had passed to B. Thus our own appellate courts have consistently stated that the crime has no application to the failure to fulfill contractual obligations, i.e., debt. Commonwealth v. Wiener, 340 Pa. 369, 17 A. 2d 357 (1941); Pearl Assur. Co. v. Nat’l. Ins. Agency, supra; Commonwealth v. Mitchneck, 130 Pa. Superior Ct. 433, 198 A. 463 (1938).
In Commonwealth v. Bixler, supra, defendant borrowed $500 from the prosecutor and defaulted on his promise to deliver the proceeds of sale of certain common stock within six months. Unanimously reversing, our Court stated (79 Pa. Superior Ct. at 297-298) : “The defendant is not charged with obtaining money *65 under false pretenses but with converting to his own use money belonging to another. The defendant did not promise to return the money in kind. He had the undoubted right to use it as he saw fit, but at the end of six weeks he was to refund it out of the proceeds of 500 shares of the prosecutor’s stock .... To revert to the act . . . the defendant did not receive any money or goods which belonged to any person other than himself .... Thus his failure to keep his contract is the foundation of the charge .... The law does not make the breaking of a contract a crime . . . .” In the instant case, the defendant was not indicted for cheating by false pretenses.[2]
The Commonwealth’s reliance on Commonwealth v. Heintz, 182 Pa. Superior Ct. 331, 126 A. 2d 498 (1956) (allocatur refused), is clearly misplaced. It dealt only with the charge of obtaining money by false pretenses, the appeal as to the charge of fraudulent conversion having been quashed. The alleged fraud there was receiving the money with the then intent to defraud by the defendant’s false statement that he had certain equipment on hand. The instant case in no way involves any false representation of an existing fact at the time the money was paid to the defendant. *66 Likewise, the Commonwealth’s reliance on language in Commonwealth v. Schad, 218 Pa. Superior Ct. 359, 280 A. 2d 655 (1971), is unwarranted because that case emphasizes the need for some proof that the defendant did not in good faith believe he had a right to the money paid him. There is nothing in the instant record which justifies any conclusion other than that the defendant properly believed that money which had been paid to him belonged to him.
In Commonwealth v. Overheim, supra, the defendant, an auto dealer, sold the prosecutor’s car but failed to grant a trade-in allowance credit pursuant to the agreement of the parties. Reversing his conviction of fraudulent conversion, Judge Keller stated (106 Pa. Superior Ct. at 427-428, 162 A. at 476) : “A purchaser of an article to be delivered in the future, can pay for it in full or in part at the time it is ordered, and rely on the credit of the seller just as well as a dealer can deliver an article to a purchaser to be paid for in the future, and rely on the latter’s credit. The mere fact that either party thus trusted may default on his sale or purchase . . . does not of itself make him subject to criminal prosecution .... No[r] . . . does it apply to . . . property . . . [which] has been transferred by the owner with the purpose and intent of passing the property and title.”
In the instant case, complainants paid money to defendant who promised in return to produce the memorials, pay fees to cemeteries for foundations and erect the monuments. Just as in Bixler and Overheim the Commonwealth was unable to show that the purchasers did not intend defendant to have the full beneficial interest in their payments. Proof of the debt was insufficient.
The conviction should be reversed and defendant discharged.

 The Unfair Trade Practices and Consumer Protection Law, December 17, 1968, P. L. , No. 387, §1 et seq., 73 P.S. §201-1 et seq.

 Act of Juno 24, 1939, P. L. 872, §836, as amended, 18 P.S. §4836. The instant defendant was not tried for cheating by false pretenses, assuming it would apply to a purchaser or seller who never intended to perform, see Commonwealth v. Kelinson, 199 Pa. Superior Ct. 135, 184 A. 2d 374 (1962) ; Commonwealth v. J-Ieintz, supra; Commonwealth v. Maul', 79 Pa. Superior Ct. 153 (1922) (funeral director who used less expensive casket than promised). In order to make out the crime of cheating by false pretenses the accused must possess a fraudulent intent when value is received. The lower court found only that defendant had a fraudulent intent when he supposedly converted the payments and it is impermissible to assume that this intent related back to the inception of the transactions.